629 So.2d 1243 (1993)
STATE of Louisiana, Appellee,
v.
Randy OUTLEY, Appellant.
No. 25429-KA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1993.
Rehearing Denied January 13, 1994.
*1246 Richard J. Gallot, Jr., Ruston, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Robert W. Levy, Dist. Atty., John L. Sheehan, Asst. Dist. Atty., Ruston, for appellee.
Before MARVIN, VICTORY and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Randy Outley, was charged by grand jury indictment with second degree murder. After a jury trial, he was found guilty and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals. For the reasons assigned below, we affirm defendant's conviction and sentence.

FACTS
On Sunday morning, January 27, 1991, Perry Mathis and Jason Traylor were returning *1247 to Dubach on Highway 167 when they noticed a van partially submerged in Cypress Creek. They stopped their vehicle to check the area and discovered a body in the creek. The Lincoln Parish Sheriff's Office was notified. A license plate check revealed that the van belonged to Joe Robert Blair.
Joe Blair was the defendant's stepfather, and they were together the entire day on the day before the victim's body was discovered. Defendant and Blair went to various places during that day, and their last stop was at Sam Jackson's residence. Defendant and Blair left Jackson's home at approximately 11:00 p.m. This was the last time Blair was seen alive.
Approximately eight months later, on August 23, 1991, Deputy Kenneth Wesley received a telephone call from John Rhone, defendant's biological father. Rhone told Wesley that while the defendant was visiting with him and his girlfriend, Shirley Pleasant, defendant admitted he had killed his stepfather, Joe Blair, and dumped the body in a creek. Defendant was subsequently indicted, tried and convicted for the murder of Joe Blair.
Defendant appeals asserting twenty-three assignments of error.

DISCUSSION

ASSIGNMENTS OF ERROR NOS. 6, 8 & 22:
These assignments were not briefed and are therefore deemed abandoned. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989).

ASSIGNMENT OF ERROR NO. 1:
Defendant contends the trial court erred in denying his motion to quash the grand jury indictment. He argues he was prejudiced by the presence of his first cousin, Rebecca Rhone, on the grand jury. He asserts that the motion should have been granted because the Rhone family harbors hatred, malice and ill will against him, and therefore, Ms. Rhone could not have been impartial.
LSA-C.Cr.P. Art. 419(A) provides that a jury venire "shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venire solely upon the basis of race." The defense has the burden of proving the grounds for setting aside the venire. State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1992), writ denied, 594 So.2d 1317 (La.1992).
No testimony was adduced during the hearing on the motion to quash. The defendant presented the entire record to support his claim that his cousin harbored ill will against him. However, there is nothing in the record to support his bare allegation that the Rhone family harbors ill will toward him or that Ms. Rhone's presence on the grand jury caused him irreparable injury. Without support for his bare claim of ill will, the motion to quash was properly denied. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2, 3, 7 & 10:
Defendant argues that his trial preparation was impaired because the state did not sufficiently comply with his discovery requests.
Defense counsel filed a motion for discovery on October 30, 1991. The state's answer, filed on November 15, 1991, included a copy of: the affidavit for arrest warrant; the arrest warrant; the arrest report; the names, addresses, telephone numbers and statements of the individuals who were interrogated by the Lincoln Parish Sheriff's Office; the detective's synopsis of the case; the defendant's signed Miranda warning; the defendant's signed consent to search his premises and property; the autopsy report of Joe Blair; and the evidence and transfer receipt listing the items collected from defendant, the crime scene, and the victim's home. After the state filed its answer, defendant, appearing pro se, filed several discovery motions.
*1248 On March 27, 1992, there was a hearing on defendant's discovery motions. Defendant was represented by different counsel at the hearing. The trial court found that the state's response to the discovery motion filed by defendant's first attorney was sufficient; nonetheless, the trial court gave defendant ten days to file a supplemental memorandum delineating what he believed had not been provided or why a particular response was legally insufficient. Defendant subsequently filed two supplemental memoranda, which were answered by the state. Defendant did not make any further objections to the state's answers nor did he object to the introduction of evidence presented by the state during trial on the ground that the state had not complied with his discovery requests. Therefore, defendant's complaints concerning the state's answers to the discovery requests are without merit.
Defendant also contends he could not prepare for trial because he was not timely supplied with the crime lab report.
On September 2, 1991, during a preliminary examination, it was discovered that the crime lab report was sent to the Lincoln Parish Sheriff's Office, rather than the district attorney's office. The record shows that, at the close of the preliminary examination, the state gave notice of intent to introduce the certified lab report into evidence at the trial and provided the defendant with a copy of the report.
Defendant's trial did not begin until December 7, 1992. Therefore, he had the crime lab report three months before trial commenced. The defendant was given ample time to prepare a defense for his trial. This argument is without merit.
Defendant further argues the state should have introduced the death certificate into evidence and should have called the Lincoln Parish coroner to testify at trial. He contends the death certificate and the coroner's testimony would have conflicted with the autopsy report, and this conflict would have created a reasonable doubt as to the time and cause of death.
Although a coroner's autopsy is competent evidence to prove the fact of death and the cause of death, the same can be proven by any competent evidence. LSA-C.Cr.P. Art. 105; State v. Winzer, 354 So.2d 533 (La.1978). The state is not limited to utilizing the coroner's report to prove the fact of death and the cause of death. State v. Trahan, 543 So.2d 984 (La.App. 3d Cir.1989), aff'd, 576 So.2d 1 (La.1990).
The state relied upon Dr. George McCormick, a forensic pathologist and the Caddo Parish coroner, whose testimony concerning the fact and cause of the victim's death was based upon his personal observations. As an expert, he was qualified to testify concerning the victim's injuries and cause of death. LSA-C.E. Art. 702. If defendant believed that the death certificate and the Lincoln Parish coroner's testimony would have benefited his case, he could have produced this evidence during the presentation of his defense. These assignments lack merit.

ASSIGNMENT OF ERROR NO. 4:
Defendant argues the trial court erred in denying his requests for the grand jury transcripts. He contends the grand jury proceedings should have been recorded so that he could review the proceedings and determine whether there was probable cause for the charges and whether the proceedings were conducted according to law. He asserts that this case should be reversed and remanded since the grand jury proceedings were not recorded.
During the hearing on defendant's motion to obtain a copy of the grand jury proceedings, it was revealed that the proceedings, like most grand jury proceedings, were not recorded. Even if the proceedings had been recorded, the trial court is under no obligation to furnish defendant a copy of the grand jury transcripts without a showing of a particularized need. State v. Trosclair, 443 So.2d 1098 (La.1983).
The party seeking disclosure has the burden of proving that the need for disclosure outweighs the need for secrecy in a grand jury proceeding. Trosclair, supra. Defendant has not alleged any specific facts demonstrating that he has been prejudiced *1249 by not having the transcript. Further, he has failed to show a particularized need for a transcript. Therefore, even if the proceedings had been recorded, defendant would not be entitled to a copy of the transcript. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5:
Defendant asserts the trial court erred in failing to compel the state to comply with his motion for discovery and inspection. Defendant complains that the state did not give him the shoes he wore on the night Blair died. He also complains that the state did not allow him to inspect the photographs used in a photographic line-up.
LSA-C.Cr.P. Art. 718 provides that the district attorney may be ordered to permit or authorize the defendant to have access to certain documents and tangible items. The state complies with discovery by making evidence available at a defendant's convenience. State v. Hooks, 421 So.2d 880 (La.1982). When a defendant fails to avail himself of the right to inspect, there can be no reversible error. State v. Trahan, supra.
Defendant knew the law enforcement officer had confiscated his shoes and that they were in the state's possession. Yet, there is no evidence in the record to indicate that counsel attempted to inspect the shoes or any of the other physical evidence. The state is not obligated to physically deliver evidence within its custody, possession or control to a defendant. It need only make it available for inspection. Here, the state responded to defendant's request for discovery by stating that all physical evidence could be inspected by contacting the Lincoln Parish Sheriff's Office. Because counsel did not make the effort to inspect the evidence, he cannot complain of the lack of access to the evidence on appeal. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 9:
Defendant contends his statutory right to a speedy trial was denied. On April 15, 1992, defendant filed a motion for a speedy trial pursuant to LSA-C.Cr.P. Art. 701(D). That article provides that after a motion for a speedy trial is filed, a defendant who is charged with a felony and is continued in custody shall be released without bail if trial does not commence within one hundred twenty days. If it is shown that the trial was delayed for just cause, then defendant need not be released without bail.
Defendant has a constitutional and a statutory right to a speedy trial. LSA-C.Cr.P. Art. 701 is not the equivalent of the constitutional right to a speedy trial. State v. Sosa, 446 So.2d 429 (La.App. 4th Cir.1984), writ denied, 450 So.2d 361 (La. 1984), cert. denied, 469 U.S. 866, 105 S.Ct. 209, 83 L.Ed.2d 140 (1984); State v. Johnston, 480 So.2d 823 (La.App. 2d Cir.1985). The legislature has not provided a remedy for failure to comply with Article 701(D)(1). State v. Cody, 446 So.2d 1278 (La.App. 2d Cir.1984). A violation of the article does not bar prosecution but merely authorizes pretrial release. Johnston, supra. Since the defendant has been tried and convicted of this offense, this issue is moot.
The constitutional right to a speedy trial is fundamental and is guaranteed to the accused. LSA-La. Const.1974, Art. I § 16 (1974); U.S. Const. amends. VI and XIV; Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The right attaches when an individual becomes an accused, either by grand jury indictment or bill of information or arrest and actual restraint. State v. Bodley, 394 So.2d 584 (La.1981). Louisiana has adopted the balancing test of Barker v. Wingo, supra, in which the conduct of both the prosecution and the defendant are weighed. The four factors to be considered are: 1) the length of delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant, such as the possible impairment of the presentation of his defense. Barker v. Wingo, supra; State v. James, 394 So.2d 1197 (La.1981); State v. Johnston, supra.
Defendant was arrested on August 23, 1991, and he was tried approximately one year and four months later, on December 7, 1992. Trial was originally fixed for February 3, 1992, but on the state's oral motion, the trial was upset and re-fixed for May 4, 1992.
*1250 Defendant asserted his right to a speedy trial by filing a motion for a speedy trial on April 15, 1992.
Trial was upset on two more occasions on the state's motion and was finally fixed for September 21, 1992. The state and defendant subsequently agreed that the September 21, 1992 trial date would comply with the speedy trial requirement if the state would concur in the defendant's request for a preliminary examination. Pursuant to the agreement, a preliminary examination to perpetuate testimony and to re-fix the defendant's bond was held on September 2, 1992.
Trial did not commence on September 21, 1992 because a blood test had not been completed. The individual who collected defendant's blood sample had used the wrong test tube, and another sample of defendant's blood was required. A search warrant was issued and an attempt to collect defendant's blood was made on August 20, 1992. Defendant refused to honor the search warrant because his counsel was not present. Also, Dr. McCormick, the state's expert witness, was not available to testify that week.
When defendant's trial did not begin on the scheduled date, defendant filed a rule to show cause. After the hearing on the rule, defendant's trial was set for the next available trial date, December 7, 1992.
The record shows that defendant was arrested on August 23, 1991, but did not assert his right to a speedy trial until April 15, 1992. The defendant and the state stipulated that the September 21, 1992 trial date would conform to the speedy trial requirement. The delay from the September 21, 1992 trial date was caused by defendant's refusal to submit to the blood tests and because a witness was unavailable. There is no indication that defendant was prejudiced by the delay, nor does he assert that his trial preparation was impaired due to the delay. Therefore, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 11:
Defendant assigns as error, the trial court's failure to act on his motion to quash the indictment because of the expiration of the time limitation for the commencement of trial.
Defendant personally filed this motion. The trial court refused to entertain the motion because defendant was represented by counsel. It is well-settled in Louisiana that a trial court is not required to entertain motions filed by a defendant who is represented by counsel. State v. McCabe, 420 So.2d 955 (La.1982); State v. Walter, 542 So.2d 586 (La.App. 1st Cir.1989), writ denied, 546 So.2d 1222 (La.1989). The local court under which this defendant was convicted also provides that a defendant has no right to be both represented and representative. 3d J.Dist.R. 19(D). This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 14 & 15:
Defendant assigns as error the trial court's denial of his Batson challenge.
A peremptory challenge by the state shall not be based solely upon the basis of the race of the juror. LSA-C.Cr.P. 795(C); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to establish a prima facie case of race-based discrimination in the state's use of peremptory exceptions, the defendant must show that (1) he is a member of a cognizable racial group; and (2) facts and relevant circumstances indicate that the state exercised peremptory challenges to exclude veniremen from the jury on the basis of race. If the defendant makes a prima facie showing, the burden shifts to the state to come forward with racially neutral explanations for challenging the black prospective jurors. State v. Mims, 505 So.2d 747 (La.App. 2d Cir. 1987).
Defendant has not made a prima facie case of race-based discrimination because the record does not indicate his race. In brief, he refers to the arrest report as evidence that he is black, but the arrest report was not entered into evidence.
Although the trial court found the defendant had not made a prima facie showing of discrimination because blacks were on the jury and the state had not exercised all of its peremptory challenges, it nonetheless entertained defendant's Batson challenge. The state was allowed to set forth reasons for its *1251 use of the peremptory challenges. The trial court found that the state's reasons for exercising its peremptory challenges against the eight black prospective jurors were sufficient, racially neutral reasons.
An examination of the record indicates the state exercised peremptory challenges against seven black prospective jurors and had five peremptory challenges remaining at the close of jury selection. The jury was ultimately composed of ten whites and two blacks. During the selection of the alternate jurors, the state exercised its two peremptory challenges against one black and one white prospective juror.
The record indicates that the state gave the following reasons for exercising its peremptory challenges against the black prospective jurors:
(1) Linda Lewis Davis said that she had a problem with circumstantial evidence. The state believed that since she was young, twenty-one years old, she could be misled by the defense as to the use of direct and circumstantial evidence.
(2) Gwendolyn Duplantier stated that she knew defense counsel, Richard Gallot, very well and that she would like to see him do well in the trial. The state believed that if all things were equal, she would rather see defense counsel win.
(3) Teri Green stated that she knew defense counsel and that her father is an auxiliary officer with the Lincoln Parish Sheriff's Department. The state was also concerned that she did not appear to be interested in the proceedings, and as a social worker, she might have a liberal approach toward the case and be biased toward the defendant.
(4) Eric Patterson said he was taking medication for a mental condition. The state indicated it was uncomfortable with the effect this mental condition may have on his comprehension of the case. The state was also concerned that as a minister, he might be too inclined toward forgiveness.
(5) Elijah Dunn had been convicted of a felony but did not volunteer this information. One of the district attorneys present during the voir dire happened to be familiar with Dunn's conviction and questioned him. Although Dunn eventually admitted the conviction and stated that he would not hold the conviction against the state, the state excused him because he had not been truthful in his initial responses.
(6) Craig Bass was also convicted of a crime in Lincoln Parish and knew defense counsel.
(7) Dewanna Bedford, a single, unemployed parent seemed to be in disagreement with the idea of serving on the jury and resistant to the authority of the court. The state was also concerned because her father was working at the Lincoln Parish Detention Center where the defendant had been a pre-trial detainee.
(8) Madelle Brown knew defense counsel and they are both members of the same organization.
Assuming defendant made a prima facie showing of purposeful discrimination, this showing was rebutted by the state's race-neutral reasons that are supported by the record. Since the state articulated justifiable, racially neutral reasons for using its peremptory challenges, the trial court properly overruled defendant's Batson challenge. This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 16, 17, 18, 19 & 21:
By the assignment, the defendant complains of the trial court's ruling on various post-trial motions.
Defendant initially asserts that the evidence presented at trial was insufficient to support a verdict of guilty. He also contends the trial court erred in denying his post verdict judgment of acquittal.
LSA-C.Cr.P. Art. 821 provides that a post verdict judgment of acquittal shall be granted if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. This article also raises the question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a *1252 sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.App.2d Cir.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. The statutory rule as to circumstantial evidence is, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. However, this statutory rule for circumstantial evidence does not provide a separate test from the Jackson standard whenever the prosecution relies upon circumstantial evidence to prove an element of the offense. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1317 (La.1985).
Although the circumstantial evidence rule may not establish a stricter standard of review than the more general rational jurors' reasonable doubt formula, it does emphasize the need for careful observation of the usual standard and provides a helpful methodology for its implementations in cases that hinge upon the evaluation of circumstantial evidence. State v. Wright, supra; State v. Eason, supra.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const., Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
Defendant argues that the state did not put forth any direct evidence to prove that he was responsible for Blair's death. He also contends the pathologist could not conclude that Blair's death was a homicide. Defendant further asserts that except for his fingerprint on a beer can located on the passenger side of the front console of the van, there was no physical evidence that linked him to Blair's death.
To prove second degree murder, a violation of LSA-R.S. 14:30.1, the state must show defendant killed Blair with the specific intent to kill or inflict great bodily harm.
Dr. McCormick testified Blair died of multiple traumatic injuries consistent with a beating or being hit by a vehicle.
John Rhone, defendant's biological father, testified defendant admitted that he had beaten "his step-daddy to death" and threw him in Cypress Creek. He also testified that, a few days subsequent to the day of the admission, the defendant had become angry with him while he was drinking and had thrown a beer bottle at him while stating, "[y]ou know I tried to kill you one timejust go on, make sure I killed [sic] you like I killed my step-daddy."
Shirley Pleasant, Rhone's girlfriend, testified the defendant said he had to leave Monroe because he had killed his stepfather. She also witnessed the incident where defendant threw a beer bottle at Rhone and threatened to kill Rhone as he had killed his stepfather. Pleasant testified that defendant told Rhone that he would "f___ him up like he did his step-daddythat he had beat hisbeaten his step-daddy and put him in a van and pushed him in the river."
Michael Caesar testified that while he was playing chess with the defendant at the Lincoln Parish Detention Center, defendant admitted that he was with Blair on the day Blair was killed. Defendant stated that he hit Blair in the head and left the area on foot. He also remarked the state could not prove he killed his stepfather.
Virginia Becks was searching through a trash bin on Highway 167 in Vienna on the morning of Sunday, January 27, 1991. She saw Blair's van, which had a distinctive pattern painted on the sides, heading north on the highway. She could not see who was driving the van. A short time later, she saw the defendant walking south, on the same *1253 side of the highway that she was on, carrying a coat or package under his arm.
Leonard Jones went to high school with defendant. He testified he saw defendant standing at a stop sign on Highway 167 South at some time after 6:00 a.m. Sunday morning. He gave defendant a ride to a grocery store on Chatham Highway.
Defendant testified that after leaving Sam Jackson's, Blair took him to his grandmother's home. Defendant claims he watched television for a while and then went to the store for cigarettes. He said he also visited a friend before he returned to his grandmother's house and went to sleep on a couch. He stated he did not leave his grandmother's house again until approximately 8:00 a.m.
Defendant's grandmother testified that defendant came to her home twice on Saturday night. She stated the first time defendant came to her home it was approximately 11:30 p.m. or 12:00 a.m. Defendant inquired whether Joe had been there because he was supposed to pick him up. She did not know what time the defendant returned to her home. When she woke up around 7:30 a.m. on Sunday morning, she found the defendant sitting on her couch.
The evidence shows that defendant stated in the presence of several people that he had killed his stepfather. A witness saw Blair's van on Highway 167 heading north, and the defendant was later seen walking south on the highway. Finally, defendant's testimony that he spent the night at his grandmother's house is contradicted by the witness who saw him walking on Highway 167 and the witness who subsequently gave him a ride when he saw him at a stop sign on Highway 167. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the prosecution proved beyond a reasonable doubt the defendant murdered Joe Blair with the specific intent to kill him.

ASSIGNMENTS OF ERROR NOS. 12 & 13:
Defendant argues Rhone, Pleasant and Roosevelt Wilson should not have been allowed to testify that he had beaten and attempted to kill Rhone in 1988 because it was evidence of another crime. He asserts this evidence only had the effect of showing that he was a bad person. He also contends the state's Prieur notice was not timely filed and was insufficient.
The state must give pre-trial notice of its intent to use evidence of other crimes. State v. Prieur, 277 So.2d 126 (La.1973). Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981).
In the instant case, Rhone testified that defendant once threw a beer bottle at him while declaring, "[y]ou know I tried to kill you one timejust go on, make sure I killed [sic] you like I killed my step-daddy." Rhone then described how defendant severely beat him and tried to run over him with a car. Pleasant and Wilson testified that they witnessed these events and corroborated Rhone's story.
Defendant's statement that he had killed his stepfather is an admission of guilt of the crime for which he was on trial. State v. Sonnier, 558 So.2d 749 (La.App. 3d Cir.1990); LSA-C.E. Art. 801(D)(2). It was offered by the state to show that defendant had admitted that he had killed his stepfather. The entire contents of the defendant's statement were necessary to explain the circumstances surrounding the admission. Rhone's testimony concerning the 1988 assault was merely an explanation of the defendant's remarks as to how he had beaten and attempted to kill Rhone on an earlier occasion, how he had actually killed the victim, and how he could carry out his present threats against Rhone. Further, the defendant did not object to Rhone's testimony concerning the previous beating. In fact, defense counsel meticulously cross-examined the witnesses on this point in the presence of the jury. Defense counsel's only objection to this line of questioning during the trial was in reference to the defendant's statement concerning the murder victim, Joe Blair. An irregularity or error cannot be availed of after the verdict is rendered unless it was objected to at the time of the occurrence. LSA-C.Cr.P. Art. 841; State v. West, 617 *1254 So.2d 1384 (La.App. 2d Cir.1993) This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 20:
Defendant contends the trial court erred in denying his motion for a new trial. He argues that pursuant to LSA-C.Cr.P. Art. 851(4), his motion for a new trial should have been granted because the state did not disclose that Virginia Becks was a witness. Defendant also contends Becks made a tainted out-of-court identification.
Defendant did not object to Mrs. Becks' testimony during the trial. Therefore, he cannot complain of this testimony on appeal. LSA-C.Cr.P. Art. 841; State v. West, supra.
After the trial, defendant discovered that Mrs. Becks was shown a photograph of the defendant a week before trial. Defendant argues that since she was shown only his photograph, her out-of-court identification of him was tainted.
The record shows Mrs. Becks' identification of defendant was not the result of any suggestion or prompting. During her first interview with Deputy Kenneth Wesley, Mrs. Becks identified the person she saw walking on Highway 167 as Joe Blair's stepson. She had known defendant since he was a child and recalled his name when Deputy Wesley mentioned it. Since the witness had previously identified the defendant and stated that she had personally known him for several years, we find no prejudicial error in allowing the witness to identify a photograph of the defendant one week prior to trial. Thus, there was no out-of-court line up identification by Mrs. Becks. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 23:
In the final assignment of error, defense counsel argues that he provided ineffective assistance of counsel to his client. Counsel states that when he was appointed to represent defendant, he had been licensed for a little over one year. He states although he has done his best to represent the defendant, his inexperience has deprived the defendant of his constitutionally protected right to effective assistance of counsel.
Ineffective assistance of counsel is more properly raised in a motion for post conviction relief rather than by direct appeal. State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir.1987), writ denied, 505 So.2d 1139 (La. 1987). This rule allows a full evidentiary hearing on the allegations of ineffective assistance. State v. Barnes, 365 So.2d 1282 (La. 1978). However, if the record fully discloses the evidence necessary to decide the issue, it may be considered on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. O'Neal, supra.
The United States Supreme Court, in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-prong test to determine ineffective assistance of counsel. First, there must be a specific showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Secondly, counsel's errors must be so serious that the defendant was deprived of his right to a fair trial, a trial whose result is reliable. It must be shown that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, supra.
Particular acts or omissions by counsel which led to the claim must be identified; general statements and conclusionary charges will not suffice. State v. O'Neal, supra. There is a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance. Strickland v. Washington, supra; State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991).
Counsel for defendant asserts this Court denied the defendant's writ of review on the issue of the motion for a speedy trial because counsel failed to comply with our appellate court rules when he filed his writ application. Since we have determined in our consideration of the ninth assignment of error that defendant was not prejudiced by the delay of the trial, we find that the outcome of these proceedings was not affected by the denial of the writ application.
*1255 Counsel also alleges that defendant's rights were jeopardized because his appellate brief was filed late. We find that counsel was granted two extensions of time within which to file his appellate brief. His brief was eventually filed in this Court and is being considered in this review. Defendant was not prejudiced by the late filing.
We find nothing in the record to indicate that counsel's conduct fell below the range of reasonable professional assistance. Counsel has failed to demonstrate that but for the specific acts alleged in this assignment, the outcome of defendant's trial would have been different. This assignment is without merit.

CONCLUSION
For the reasons assigned above, defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, VICTORY, BROWN, STEWART and WILLIAMS, JJ.
Rehearing denied.