h GASKINS, J.
The defendant, Billy Ray Stone, was convicted by a unanimous jury of second degree murder, a violation of La. R.S. 14:30.1. The trial court sentenced the defendant to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation or suspension. The defendant now appeals his conviction and sentence, asserting that there was insufficient evidence upon which to base his conviction. He also contends that the sentence imposed is excessive. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
The defendant had a history of mental illness and subsisted on social security benefits. At the time of this offense, he was living in the home of the victim, George Cassel.[1] The defendant paid Mr. Cassel rent. On the evening of July 2, 1997, the defendant became upset when Mr. Cassel informed him of an increase in the rent. According to the defendant, the proposed rent increase would have almost completely exhausted his monthly social security benefit. Apparently, the two men had been drinking quite heavily. During the early hours of July 3, 1997, the defendant went into the kitchen, got a knife, and stabbed Mr. Cassel five times in the upper torso and neck. The defendant became frightened and called 911. In the 911 call, the defendant stated that he had attempted to kill Mr. Cassel. The victim was able to run from the house. Mr. Cassel was hospitalized for approximately two weeks, then died of complications caused by the stab wounds.
Officer Clint Guttirez of the Shreveport Police Department responded to the call. The defendant approached the officer and told him that he had called the police. Officer Guttirez advised the defendant of his Miranda rights and thereafter the defendant admitted to stabbing Mr. Cassel. An investigator with the 1 ^Shreveport Police Department, Tom Oster, was also called to the scene. The defendant gave a statement to Officer Oster, in which he admitted stabbing Mr. Cassel because he tried to take the defendant’s check (apparently referring to his monthly social security disability.)
The defendant was arrested and originally charged with attempted second de *1000 gree murder. However, after the victim died as a result of a stroke precipitated by the stab wounds, a grand jury returned an indictment against the defendant for second degree murder. A sanity commission was appointed and determined that, although the defendant suffered from schizophrenia, paranoid type, he knew right from wrong at the time of the commission of the offense and was able to aid counsel in the trial of this matter. Therefore, the trial court concluded that the defendant was competent to stand trial. The defendant pled not guilty by reason of insanity.
Trial in the matter was held on May 17-19, 1999. A jury found the defendant guilty as charged. The defendant then filed a motion for post verdict judgment of acquittal and/or modification of judgment and a motion for new trial. The defendant argued that the evidence did not support a conviction for second degree murder. In the alternative, he argued that the evidence supported only a finding of guilty of manslaughter or not guilty by reason of insanity. The motions were denied by the trial court on June 10, 1999. On June 22, 1999, the defendant appeared before the court and received the mandatory sentence for second degree murder, life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The plaintiff then appealed, claiming there was ^insufficient evidence to support his conviction and that the sentence imposed was excessive.[2]
SUFFICIENCY OF EVIDENCE
On appeal, the defendant claims that there was insufficient evidence presented at trial to convict him of second degree murder. The defendant asserts that the state failed to carry its burden of proving that the victim died as the result of the stab wounds inflicted by the defendant. Prior to the stabbing, Mr. Cassel had been diagnosed with a 100% occluded internal carotid artery. The defendant argues that Mr. Cassel had recovered from the stab wounds, but died of a stroke which was not attributable to the stabbing.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of |4fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A *1001 reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, supra.
Second degree murder is defined in La. R.S. 14:30.1, in pertinent part, as follows:
A. Second degree murder is the killing of a human being:
(1) when the offender has a specific intent to kill or to inflict great bodily harm.
In his appeal, the defendant does not argue that he lacked the requisite specific intent to kill or inflict great bodily harm when he stabbed Mr. Cassel. Instead, the defendant argues that the state failed to prove causation as a necessary element under La. R.S. 14:30.1. Specifically, the defendant argues that the coroner had no factual basis for his opinion regarding cause of death. He also argues that the state did not prove beyond a reasonable doubt that the victim died as a result of the stab wounds. The defendant contends that the state relied upon a “but for” |fianalysis, which falls short of the required “substantial contributing cause” burden of proof, which is the applicable standard. He contends that, at most, the jury could have found him guilty of either attempted second degree murder or of manslaughter.
The record shows that the coroner did, in fact, have a specific factual basis concerning the victim’s cause of death. Dr. McCormick testified that he had reviewed Mr. Cassel’s entire hospital medical chart and that his staff had conducted an investigation of the facts surrounding Mr. Cas-sel’s death. This information, in conjunction with the autopsy itself, provided a sufficient factual basis from which Dr. McCormick could form his expert opinion regarding the cause of death. State v. Outley, 629 So.2d 1243 (La.App. 2d Cir. 1993), writ denied, 637 So.2d 476 (La. 1994); La. C.E. arts. 702 & 705(B).
The defendant’s argument regarding the state’s burden of proof on causation has no basis in law or fact. The state is not required to show that the defendant’s conduct was the sole proximate cause of the victim’s death in order to satisfy the causation element of this offense. State v. Season, 26,725 (La.App.2d Cir.4/7/95), 653 So.2d 1274, writ denied, 95-1388 (La.10/27/95), 661 So.2d 1359. Sufficient proof is presented where it is shown that the defendant’s actions were a “contributing cause” or a “substantial factor” in the resulting death of the victim. State v. Baker, 31-162 (La.App.2d Cir.10/28/98), 720 So.2d 767, writ denied, 99-0007 (La.4/23/99), 742 So.2d 880; State v. Beason, supra; State v. Shanks, 97-1885 (La.App. 1st Cir. 6/29/98), 715 So.2d 157; State v. Matthews, 450 So.2d 644 (La.1984). Whether the terms “substantial factor” or “clearly contributing cause” are used, these standards are used interchangeably and therefore, the basic determination is whether the defendant’s act was a proximate cause of the victim’s death. State v. Baker, supra. The coroner’s testimony regarding his autopsy is competent evidence to prove cause of death. State v. \y Outley, supra. See also, State v. Durio, 371 So.2d 1158 (La.1979). In this case, the Caddo Parish Coroner, Dr. George M. McCormick, II, testified regarding his autopsy of the victim and his findings regarding the cause of death. During direct examination, Dr. McCormick testified as follows:
District Attorney Q: Dr. McCormick, did you perform an autopsy on George [Cassel] on July 18 th of 1997?
Dr. McCormick A: Yes, ma’am I did.
*1002 District Attorney Q: And from that autopsy, were you able to determine Mr. [Cassel’s] cause of death?
Dr. McCormick A: Yes.
District Attorney Q: And what were your findings?
Dr. McCormick A: I found Mr. [Cassel] had been stabbed five times. Four were superficial, one was a serious wound which struck his left lung. He was hospitalized for treatment of that stab wound. While in the hospital, he had a stroke which was his final cause of death.
[[Image here]]
District Attorney Q: And as a result of your autopsy, what did you determine caused that stroke?
Dr. McCormick A: The stab wounds.
On cross-examination, Dr. McCormick testified, as follows:
Defense counsel Q: And could this stroke have been caused because he had the occluded carotid artery?
Dr. McCormick A: Carotid, yes, sir. No, it was not caused because he had that carotid occlusion. What the carotid occlusion did was make him susceptible to having a stroke if he suffered some further insult. The insult that he suffered was the stab wounds. Now, the heart of the matter, if I might presume in explaining that answer, would he have had the stroke three days after he was admitted if he hadn’t been stabbed. God can answer that question, I can’t.
[[Image here]]
Dr. McCormick A: But we have a very sick man who suffers a major body insult. He loses 10 to 15 percent of his blood |7volume. He has to be hospitalized. He gets pneumonia, and then he has the stroke of what is already, I agree, a damaged part of his body and that caused his death.
Defense counsel Q: Okay. And—
Dr. McCormick A: But for the stab wound, he would not have died at that point in time.
Defense counsel Q: But for the stab wound, he would not have been in the hospital?
Dr. McCormick A: But for the stab wound, he would not have died of the stroke at that point in time.
Dr. McCormick continued by stating that under the given facts he was “certain” that Mr. Cassel’s stroke was caused by the stab wounds. Dr. McCormick also testified that he had received and read the full medical chart of Mr. Cassel’s hospitalization prior to reaching his conclusion regarding the cause of death.
Whether the “substantial factor” or “contributing cause” standards are used, the evidence established that the defendant caused the victim’s death.[3] In this case, Dr. McCormick testified unequivocally that the stabbing precipitated the victim’s stroke and his ultimate demise. This testimony met or exceeded the required showing on the element of causation. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that the evidence presented by the state was sufficient to find the defendant guilty of second degree murder.[4] The defendant’s arguments to the contrary are without merit.
*1003 J^EXCESSIYE SENTENCE
The defendant complains that his mandatory life sentence is excessive. The defendant argues that this court must consider whether a statutorily mandated sentence must yield to the constitutional prohibition against excessive punishment. He contends that even a sentence within statutory limits may constitute excessive punishment and is subject to appellate review and modification. He also asserts that the trial court failed to specify the sentencing considerations under La.C.Cr.P. art. 894.1 used in imposing sentence and therefore the case must be remanded for resentenc-ing. These arguments are without merit.
The defendant was convicted of second degree murder, a violation of La. R.S. 14:30.1. This statute requires a mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. It is within the legislature’s authority to determine the length of the sentence imposed for crimes classified as felonies, and the courts are charged with applying these punishments unless they are found to be unconstitutional. State v. Armstrong, 32-279 (La.App.2d Cir.9/22/99), 743 So.2d 284. The decision to assess mandatory life sentences is within the prerogative of the legislature. State v. Armstrong, supra. The assertion that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been rejected. State v. Armstrong, supra; State v. Davis, 31-711 (La.App.2d Cir.3/31/99), 732 So.2d 612; State v. Ruffins, 32,870 (La.App.2d Cir.12/10/99), 748 So.2d 614.
In addition, the defendant has failed to show by clear and convincing evidence that his particular circumstances are an exception to the constitutional application of this mandatory sentence. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The sentence of life imprisonment without benefit of parole, probation, or suspension of sentence in the present case does not shock the sense 19of justice in light of the crime committed and the likely risk of harm to others by the defendant.
Further, the trial court did not err in failing to articulate the factors considered in imposing sentence. Failing to articulate reasons for the sentence as set forth in La.C.Cr.P. art. 894.1 when imposing a mandatory life sentence is not error. In such circumstances, setting forth the factors considered in imposing sentence would be an exercise in futility since the court has no discretion. State v. Armstrong, supra; State v. Rice, 31,871 (La. App.2d Cir.3/31/99), 736 So.2d 956, writ denied, 99-1314 (La.10/15/99), 748 So.2d 464; State v. Koon, 31177 (La.App.2d Cir.2/24/99), 730 So.2d 503; State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992). The court does not abuse its discretion by declining to do so. State v. Ruffins, supra.
CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Billy Ray Stone.
AFFIRMED.

. The victim’s surname is listed as “Castle” in the transcript. However, the hospital records and death certificate show that the correct spelling of the name is "Cassel.” Therefore we will use the correct spelling in this opinion.

. Because the defendant failed to brief or argue his assignment of error regarding his insanity plea and the findings of the sanity commission, this issue is considered abandoned on appeal. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writs denied, 558 So.2d 1123 (La.1990).

. The defendant relies upon the case of United States v. Grey Bear, 828 F.2d 1286 (8 th Cir. 1987), cert. denied, 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990), rev’d on other grounds, 948 F.2d 405 (8 th Cir.1991), to argue that the state improperly relied upon a "but for” standard of causation in this case rather than "substantial contributing factor” or "contributing cause.” We reject the argument that an improper standard for the burden of proof was utilized in the trial court. We also find that Grey Bear, a federal case arising in the state of North Dakota, is simply inapplicable to the present case.

. See and compare State v. Shanks, supra, in which the victim died of a blood clot several weeks after being shot by the defendant.