PITMAN, J.
[ following a jury trial, Defendant, 16-year-old Paris T. Smith, was found guilty of being a principal to second degree murder in violation of La. R.S. 14:24 and 14:30. He was sentenced to life imprisonment without the benefit of probation or suspension of sentence, but the sentence was imposed with eligibility for parole. This appeal followed. For the reasons stated herein, we affirm Defendant’s conviction and sentence.

FACTS

Defendant was originally charged, along with codefendants Caddara Hogan (“Hogan”) and Farrell Rochelle (“Rochelle”), with the first degree murder of Ronald Wilson (“Wilson”) during an attempted armed robbery, contrary to La. R.S. 14:30. The grand jury indictment was amended to the charge of principal to second degree murder in violation of La. R.S. 14:24 and 14:30.1(A)(2). Defendant was transferred to adult court where Defendant and Rochelle were tried together.[1]
A jury trial was held and evidence presented that, on the day of the robbery and shooting, Defendant, Hogan and Rochelle were present at a party at the home of Eric Gilliam, a/k/a “Little E,” drinking and smoking marijuana. Ironically, the party was held in celebration of Little E’s completion of a rehabilitation program. Wilson, who was a painter and carpenter, was repairing the porch of the home where the party was being held. Defendant, Hogan and Rochelle believed Wilson was going to have money later in the day and that he planned to go to the home of a friend, Ms. Rena Lee.
12At trial, Ms. Lee testified that, on February 3, 2010, Wilson came to her home in Mansfield at approximately 7:15 p.m. They were talking, watching television and using the crack cocaine that Wilson had brought with him. Ms. Lee was on her couch and Wilson was sitting in a chair by the door when the door was kicked open by a person with a scarf wrapped around his neck and wearing a black hoodie. The person had a silver gun, which he pointed at Wilson, and asked, “Where’s the money?” When Wilson responded, “What money?” the person shot him in the foot. Wilson then told the person the money was in his truck so Wilson and the person went outside. Ms. Lee testified that she looked out the door and saw two more people, one standing at the road watching and the other at the tailgate of Wilson’s truck.
Ms. Lee stayed inside her home and she heard three shots fired. When everything became quiet, she opened her door and called Wilson’s name, but no one answered. She attempted to call 911, but received a busy signal. Her neighbors *887 called her to come out of her house, and she stayed with them until the police arrived. She did not know at that time whether or not Wilson was dead because she did not approach his body.
Ms. Lee’s back door neighbor, John Scroggins, testified that he arrived at his home around 7:00 p.m. and was watching television when he heard pops and then a firearm boom. He looked out his window and saw three African American men running up the street. One had a white dog. | ¡¡Scroggins described two of the men as two as being tall, and the third one was shorter.
Det. Adam Ewing of the DeSoto Parish Sheriffs Office investigated the case. He testified that he learned Wilson had been shot in the foot inside Ms. Lee’s home, and a .380 caliber bullet was removed from the carpet where Wilson had been sitting when he was shot. Det. Ewing further testified that Wilson was found lying outside the home and appeared to be armed with a shotgun he had retrieved from his truck. Det. Ewing recovered a 12-gauge pump shotgun that belonged to Wilson, from which two rounds had been fired. Two 12-gauge shotgun shells were recovered at the scene-one from the yard and one une-jected from the gun. Det. Ewing also testified that the police found Wilson’s wallet, which contained $732, on the passenger side of the pickup truck close to the front fender.
Det. Ewing further testified that he obtained information that three individuals were involved in the incident — Hogan, Rochelle and Defendant. Det. Ewing stated that Defendant was interviewed several times and gave conflicting statements in which he sometimes claimed to have been involved and other times claimed he was not. Det. Ewing testified that he believed Hogan was the person who shot and killed Wilson. The weapon used in the crime was never recovered, although two .380 caliber bullets were recovered — one from the floor of the home and one from Wilson’s body.
Dr. James Traitor testified that he performed the autopsy on Wilson and recovered a bullet from his body. He stated that Wilson died as a result |4of a gunshot to the upper lobe of the left lung, which bullet continued to travel through the heart to the middle lobe of the right lung, cracking the right sixth rib and lodging in the tissue near the rib fracture.
Hogan testified for the state. He had been offered and had accepted a plea bargain agreement to plead guilty to the reduced charge of manslaughter. Hogan testified that he, Rochelle and Defendant met at the party at noon and remained there until it was dark outside. He testified that it was Rochelle’s idea to rob Wilson and that Defendant was involved in the plan. Hogan testified that he knew Wilson would be going to Ms. Lee’s house that evening because a “drug party” was held at her house every first and third week of the month “when the checks come out.” He stated that the three of them decided to rob Wilson because they knew he would have money from working on “Little E’s” porch. Hogan further testified that they all dressed in black hoodies, walked to Ms. Lee’s house and waited for Wilson to come outside.
Hogan further stated that Rochelle had a chrome and black gun and that, when Rochelle grew tired of waiting for Wilson to emerge from Ms. Lee’s house, Rochelle pushed open the door and entered the house atone. Hogan testified that Rochelle shot Wilson in the foot and then took Wilson to his truck where Wilson retrieved his shotgun instead of any money. Hogan stated that he and Defendant were standing next to each other in the yard; and, when the shooting between *888 Wilson and Rochelle began, they both ran away. He testified that he did not realize Wilson had fidied until he was at Defendant's home and heard others discussing Wilson’s death.
Rochelle testified that he went to Ms. Lee’s house with Hogan, but denied planning a robbery or knowing that Hogan had a gun. He testified that he and Hogan left the party and that Hogan asked him to “go up the street and hit a lick with him” and that he agreed to go. Rochelle testified that he did not know what Hogan meant; but, when Hogan told him Wilson was supposed to have money on him and he wanted to “hit a lick,” Rochelle understood that Hogan was “fixing to go pick up some money or something.”
Rochelle further testified that Defendant met up with them as they were walking to Ms. Lee’s house. Rochelle testified that Hogan pushed Defendant into Ms. Lee’s yard and onto the porch and made him kick in the door. Thereafter, Hogan went into the house and demanded money from Wilson and it appeared that Hogan was “drawing down on some dude.” Rochelle claimed that, when shots were fired, he ran away. He stated he heard approximately four or five more gunshots and that he ran to a friend’s house. He did not know if Hogan got any money, and he did not tell anyone about what had happened.
Defendant testified in his own behalf, claiming that he was at the party earlier in the day and that Hogan told him to go get a gun from Hogan’s grandmother’s house. Defendant testified that, because he was afraid of Hogan, he walked down the block to the relative’s house, got a gun and gave it to Hogan. Defendant stated that he then went home.
| (¡According to Defendant’s testimony, he left his home about 6:00 p.m. and was walking down the street when he met up with Rochelle and Hogan on their way to Ms. Lee’s house. Hogan asked him to come along with them. Defendant testified that he was not aware they were going to Ms. Lee’s house or that they were waiting for someone to come out of the house.
Defendant testified that, when they arrived at Ms. Lee’s house, Hogan pushed him onto the porch and forced him to kick in the door. Defendant stated that, after Hogan asked Wilson for money twice, Hogan shot Wilson in the foot. Defendant further stated that, when the first shot was fired, he was going to run, but Hogan grabbed him by the arm and told him to stay. Defendant further testified that, when Wilson came out to get his wallet from the truck, he pulled out a shotgun instead and then Defendant ran away. Defendant stated that he heard a total of three shots, but only witnessed the shot fired inside the house. Defendant claimed he ran home and never saw Hogan again. He only learned that Wilson was dead when he heard others talking about the incident.
The jury found Defendant guilty as charged and he was sentenced to life in prison at hard labor, without the benefit of probation or suspension of sentence. The trial judge found Defendant may be eligible for parole, as provided in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Defendant filed a motion to reconsider sentence, claiming that the sentence was excessive and that, in light of Miller, he should have been sentenced to a term less than life with the possibility of probation and |7suspension of sentence. The motion to reconsider sentence was denied.
Defendant now appeals.

DISCUSSION

Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support the verdict and that *889 the state failed to present proof that he had a gun, shot a gun or participated in the shooting of Wilson. Defendant claims there was no proof that he knew of an armed robbery, participated in an attempted armed robbery or aided, abetted, counseled or procured Hogan and/or Rochelle to commit a robbery. Defendant claims only those persons who knowingly participate in planning or executing a crime are principals to that crime. Further, Defendant claims the testimony implicating him was inconsistent and incredible so that the essential elements of the crime were not proven beyond a reasonable doubt.
The state argues that the evidence is clearly sufficient to support the jury’s conclusion that Defendant, together with Hogan and Rochelle, went to Ms. Lee’s home with the intent to commit a robbery, which resulted in Wilson’s death. Defendant admitted he retrieved the murder weapon from Hogan’s grandmother’s residence and, on cross-examination, admitted they all three planned the robbery as a group. The state claims the evidence showed beyond a reasonable doubt that Defendant was a participant, had knowledge of the planning and was present during the botched robbery which resulted in Wilson’s death.
La. R.S. 14:24 defines principals to crimes as follows:
LAll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
La. R.S. 14:30.1 defines the crime of second degree murder and states in pertinent part as follows:
A. Second degree murder is the killing of a human being:
[[Image here]]
(2) When the offender is engaged in the perpetration or attempted perpetration of ... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.
[[Image here]]
B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
La. R.S. 14:64(A) provides in pertinent part:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The state is not required to show that the defendant’s conduct was the sole proximate cause of the victim’s death in order to satisfy the causation element of this offense. Sufficient proof is presented where it is shown that the defendant’s actions were a “contributing cause” or a “substantial factor” in the resulting death of the victim. State v. Stone, 33,383 (La.App.2d Cir.5/15/00), 758 So.2d 997, writ denied, 00-2145 (La.6/1/01), 793 So.2d 181. Under La. R.S. 14:30.1(A)(2), no intent to harm or kill is necessary to be a principal to second degree murder occurring during the course of a Rrobbery. State v. Grant, 623 So.2d 204 (La.App. 2d Cir.1993), writ denied, 629 So.2d 400 (La.1993); State v. Brown, 43,775 (La.App.2d Cir.12/3/08), 999 So.2d 179, writ denied, 09-0047 (La.9/25/09), 18 So.3d 81.
The standard of appellate review for a sufficiency of the evidence claim is *890 whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Dorsey, 10-0216 (La.9/07/11), 74 So.3d 603, cert. denied, - U.S. -, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). The reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. Id.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09),in 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence, must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that a defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/06/09), 21 So.3d 299.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra.
The evidence in this matter is more than sufficient to find Defendant guilty of being a principal to second degree murder. Hogan testified that Defendant helped plan the robbery while at the party earlier in the day. InRochelle testified that Defendant met them on the street and that Hogan forced Defendant into Ms. Lee’s yard and onto her porch and then to kick in her door. Defendant himself testified that he left the party to obtain a weapon for Hogan from Hogan’s relative and that he was present with Hogan at Ms. Lee’s house when the armed robbery and shooting took place after he kicked in the house door.
From these facts presented, any rational trier of fact could have found the essential elements of the crime of principal of second degree murder proven beyond a reasonable doubt. One of the individuals of the group was armed with a dangerous weapon and attempted to take Wilson’s *891 wallet, a thing of value, from his immediate control. The elements of armed robbery, as defined in La. R.S. 14:64(A), the underlying enumerated offense for the conviction of second degree murder, were met. Second degree murder does not require an intent to kill or inflict great bodily harm, but only requires the perpetration or attempted perpetration of an enumerated offense. La. R.S.14:30.1. Since the victim died as a result of a gunshot wound received during the commission of the armed robbery and Defendant’s participation in the actions were well documented, all of the essential elements of the crime have been proven beyond a reasonable doubt.
For the foregoing reasons, this assignment of error is without merit.
We note that the trial judge sentenced Defendant, who was 16 years old at the time of the commission of the offense, to life in prison without the possibility of probation or suspension of sentence, but with the possibility of parole. La. R.S. 15:574.4(D), as amended, provides that any person | ^serving a sentence of life imprisonment who was under the age of 18 years at the time of the commission of the offense, except for a person serving a life sentence for a conviction of first degree murder or second degree murder, shall be eligible for parole consideration. Since this Defendant is serving a sentence for conviction of second degree murder, the sentence of life in prison without the benefit of parole is still mandatory. The Louisiana Legislature has not yet amended La. R.S. 15:574.4(D) to incorporate the ruling of Miller v. Alabama, supra.
Article 1, Sec. 20, of the Louisiana Constitution states in pertinent part: “No law shall subject any person ... to cruel, excessive or unusual punishment.” In State v. Dorthey, 623 So.2d 1276 (La.1993), the supreme court recognized that, in certain circumstances, a minimum mandated sentence could be constitutionally excessive. In this case, the trial court reviewed the sentence for constitutional excessiveness and imposed this sentence with the possibility of parole in accordance with Miller v. Alabama, supra. See State v. Williams, 12-1766 (La.3/8/13), 108 So.3d 1169.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Paris J. Smith, are affirmed.
AFFIRMED.

. Although the codefendants were tried together in the lower court, the appeals have not been consolidated in this court.