420 So.2d 955 (1982)
STATE of Louisiana
v.
Dennis L. McCABE.
No. 82-KA-0147.
Supreme Court of Louisiana.
October 18, 1982.
*956 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., William C. Pegues, III, Dist. Atty., for plaintiff-appellee.
David L. Wallace, Evans, Bradley & Wallace, DeRidder, for defendant-appellant.
CHARLES R. WARD, Justice Pro Tempore[*].
The Grand Jury of Beauregard Parish indicted Dennis McCabe charging him with the second degree murder of Janice New. The pertinent part of the Louisiana Criminal Code, R.S. 14:30.1, defining second degree murder provides:
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm....
* * * * * *
The Trial Jury found McCabe guilty as charged, and the Trial Judge sentenced him to the penalty prescribed by R.S. 14:30.1: life in prison without benefit of probation, parole or suspension of sentence. McCabe appealed his conviction, and he has designated eight errors as grounds for reversal.
Before discussing the alleged errors, a brief description of events that occurred before and after the murder will aid in understanding McCabe's contentions and his assignments of error.
The first indication that McCabe was responsible for a murder occurred on November 20, 1979, when McCabe sought help from a friend, Charles Mahaffey, asking Mahaffey to use his truck to pull McCabe's car from a ditch. Mahaffey agreed to help, and after getting his truck, Mahaffey drove McCabe to a rural dead-end road in Beauregard Parish where McCabe's car was stuck. While helping McCabe, Mahaffey noticed that his brother-in-law's .22 caliber pistol was in McCabe's belt and that a 410 shotgun, which also belonged to his brother-in-law, was lying on the front seat of McCabe's car. While working to free the car, McCabe opened the trunk where Mahaffey saw a briefcase and a shovel covered with fresh mud. McCabe told Mahaffey that he had just killed and buried four people who had been out to get him.
Approximately two months later, shortly after McCabe had left Louisiana to go to Nebraska, Mahaffey contacted the Sheriff's office and informed the Sheriff of what he had seen and of what McCabe had said when the two men had been pulling the car out of the ditch. Mahaffey and Deputy Sheriff Bartlett went to investigate the area where Bartlett discovered a spent .410 shotgun shell, and, ultimately, the body of Janice New, which had been buried in a shallow grave near the place where McCabe's car had been stuck. The coroner's autopsy showed that Janice New had been shot three times with a pistol, which was held no more than two inches from her head, and she had been shot a fourth time in the head with a shotgun. After further investigation, the Beauregard Parish Sheriff's Office notified Nevada authorities that *957 Dennis McCabe was wanted as a suspect in the murder of Janice New. Shortly thereafter, Nevada authorities informed the Beauregard Parish Sheriff's Office that McCabe had been indicted for a second murder in Nevada and that he was in jail waiting trial on those charges in Douglas County, Nevada. Deputy Sheriffs Bartlett, Burban and Bishop immediately went to speak with McCabe in the Nevada jail where McCabe recounted his version of the killing in Louisiana.
According to McCabe, he and Janice New had lived together in the State of Nevada while she worked in a house of prostitution, an occupation condoned by the laws of that State. He told the sheriffs how, after living with her for several months, he had left Nevada with another woman and had come to Lake Charles to live with his uncle. Nonetheless, again according to McCabe, he and Janice New had stayed in touch with each other, and on November 20, 1979, Janice New had come to Lake Charles where he had met her in a bar to discuss details of a narcotics transaction. McCabe said that when he declined to participate, Janice New threatened him by saying that unless he changed his mind, his children would be killed by someone who was named Jack and who lived in Nevada, and in order to underscore the threat, she showed him some photographs of his children. In spite of this, McCabe told how they had left the bar and driven together in McCabe's car to a secluded rural area, forty miles north of Lake Charles where Janice New suddenly whipped out a knife and stabbed him, forcing him to shoot her in self defense, at least twice with a pistol and once with the shotgun for good measure. He recounted how he drank a few beers, how he buried the body in a shallow grave with the empty beer cans, how he left the scene only to find that his car was stuck in the ditch, and how he sought help from Mahaffey to free the car.

ASSIGNMENT OF ERROR NO. 1
McCabe contends that the Trial Court erred in refusing to provide funds for an investigator to pursue witnesses and evidence in Nevada because there were numerous people in Nevada who had heard the victim state her intention to come to Louisiana to kill McCabe. During a hearing on his motion to provide funds, McCabe testified that the names and addresses of the potential witnesses were already known to him but that he had made no effort to contact them. The Trial Judge held that since the whereabouts of the witnesses were already known to both McCabe and his counsel, McCabe had not shown a compelling need for funds for an investigation. This Court has held in both State v. Madison, 345 So.2d 485 (La.1977) and State v. Clark, 387 So.2d 1124 (La.1980) that the State must supply funds to employ an investigator upon the motion of an indigent defendant who shows that existing evidence is crucial to his defense and that he is without means to obtain that evidence.
In the instant case, however, as in State v. Clark, supra, there is an "insufficient showing that... the lack of a private investigator prevented (McCabe) from obtaining existing evidence crucial to his defense." The Trial Judge is correct; McCabe did not show a compelling need for either funds or an investigator.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
McCabe contends that the Trial Court erred when it denied him the right to serve as co-counsel.
After the Trial Judge appointed counsel to represent him, McCabe requested that the Trial Judge also appoint him as co-counsel for his trial, particularly during the voir dire and questioning of certain witnesses. A hearing was held on the motion, and although the Trial Judge denied it, he informed McCabe that he would reconsider the request during the trial proceedings, implying that he would also appoint McCabe if McCabe could make a convincing showing that he should be enrolled as co-counsel. McCabe did not make another request to be recognized as co-counsel either before or during the trial.
*958 In State v. Bodley, 394 So.2d 584, 593 (La.1981), this Court held that "[w]hile an indigent defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative."
The ruling by the Trial Judge was therefore correct; McCabe was represented by court-appointed counsel, and he did not also have a right to represent himself pro se. Moreover, the Trial Judge went beyond what was required when he gave McCabe an opportunity to show during the trial that there was a compelling reason to appoint him as co-counsel.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
McCabe contends that the Trial Court erred in refusing his motions to subpoena several witnesses from Nevada and Nebraska, witnesses who McCabe alleges would testify that Janice New had said that she was coming to Louisiana to kill him.
Before ruling on the motion, the Trial Judge requested supplemental information to show that these witnesses would be "relevant and material, and not cumulative." In response, McCabe's counsel asserted the right to subpoena twelve witnesses, and he argues that this is an unqualified right, which is given to defendants by La.C.Cr.P. Article 738 and which does not require a showing of either relevance, materiality, or the non-cumulative nature of the evidence sought. Defense counsel's focus is misplaced, however, because La.C.Cr.P. Article 738 only gives a defendant an unqualified right to subpoena twelve witnesses from within the State, not from other States.
In a criminal trial, the vehicle for compelling the attendance in Louisiana of witnesses from another state is an interstate compact, the Uniform Act to Secure the Attendance of Witnesses. Nevada, Nebraska, and Louisiana have each adopted it, and in Louisiana, it is set out in the Code of Criminal Procedure, La.C.Cr.P. Art. 741-745. La.C.Cr.P. Art. 741 describes the procedure for subpoena of witnesses from another State. In essence, after first determining that the witness is a material witness, the Trial Judge may issue a certificate to the appropriate Court of another State requesting that Court to compel the witness to appear in Louisiana to testify. La.C. Cr.P. Art. 741, which is based on Section 3 of Uniform Act to Secure the Attendance of Witnesses, clearly gives the Trial Judge discretion either to issue the certificate or to deny the motion for it. Of course, that discretion may be abused.
In State v. Barnes, 365 So.2d 1282 (La. 1978) and in State v. Jenkins, 340 So.2d 157 (La.1976), this Court has held that a defendant must show both that the testimony of out of state witnesses would be material and that the Trial Judge abused his discretion in denying defendant's motion requesting them. During the hearing on McCabe's motion to subpoena eighteen out of State witnesses, McCabe declined to make any showing that their expected testimony would be material. Because McCabe did not show materiality, it is not necessary to consider if the Trial Judge abused his discretion.
The Trial Judge did not err when he refused to issue a certificate and request the eighteen out of state witnesses whom McCabe sought to subpoena.

ASSIGNMENT OF ERROR NO. 4
McCabe argues that the Trial Court erred in refusing to quash the indictment because the State denied to him his constitutional right to a speedy trial. McCabe argues that he has been prejudiced by the delay, and he contends that the delay was caused by the State of Louisiana.
This murder occurred in November, 1979. In January of 1980, McCabe was arrested in Nevada where he was charged with yet another murder, and although he was convicted of that crime in July, 1980, the Beauregard Parish Sheriff's Office was not notified of that conviction until August, 1980. Obviously, during that time, the defendant was not available for trial in Louisiana.
*959 Following the Nevada conviction and sentencing, McCabe sent a letter to the District Attorney of Beauregard Parish in December, 1980, asking that the District Attorney either drop the charges or give him a speedy trial. The District Attorney elected to proceed, and he presented the case to the Grand Jury, which returned an indictment on December 8, 1980. Shortly after the indictment, extradition proceedings were begun, and McCabe was returned to Louisiana in April, 1981.
After his return, McCabe was arraigned on May 15, 1981, and the trial was set for the next available felony trial date, September 21, 1981. On September 14, 1981, McCabe filed his motion to quash the indictment, only five days before the original trial date. The State moved for a continuance from this date because one of its witnesses was ill, and trial was reset for October 19, 1981.
In State v. Dewey, 408 So.2d 1255, 1257 (La.1982), with facts similar to the present case, this court held:
The right to a speedy trial is guaranteed by the sixth amendment to the federal constitution and by article one, section sixteen of our state constitution. The right attaches when an individual becomes an accused whether by formal indictment or bill of information or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Perkins, 374 So.2d 1234 (La.1979). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The initial inquiry is into the length of delay; if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length is dependent upon the peculiar circumstances of the case.
The major cause of the delay from his indictment in December, 1980, to the trial in October, 1981, was McCabe's arrest, trial, and conviction in Nevada, not the conduct of Louisiana authorities. Moreover, McCabe has failed to show that any prejudice was caused by this State; he testified that his witnesses had scattered as early as March, 1980, (Vol. 2, p. 40) while he was in jail waiting trial on the Nevada charges for murder.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5
McCabe also argues that the Trial Court erred in refusing to quash the indictment because the State did not meet the conditions contained in an Interstate Agreement on Detainers, which McCabe had signed in March, 1981, before he returned to Louisiana. He contends that there was prosecutorial misconduct because the agreement provided that if he would voluntarily return to Louisiana to answer the murder charges, he would have the right to trial within 180 days after a request by him for final disposition.
Louisiana is not, however, a participant in the Interstate Agreement on Detainers, and the agreement was never signed by Louisiana officials. Instead, Louisiana officials proceeded to seek extradition of McCabe by the formal procedure, using the Governor of Louisiana's warrant for McCabe's arrest and the Governor's request for the return of McCabe to this State.
If McCabe was misled, it was done inadvertently by Nevada officials, not by the State of Louisiana. There was not prosecutorial misconduct by officials of this State, and the assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
McCabe argues that the Trial Court erred in admitting several items of evidence, which were exhibits for the State, because the chain of custody had not been proven. He argues that the fingerprints of the victim, the shotgun pellets, and a .22 caliber bullet removed from the body of Janice New during the autopsy should not have been permitted to go to the jury as evidence.
*960 During trial witnesses identified each of these items. Nevertheless, McCabe argues that because there was a break in the chain of custody of these items, they were not sufficiently identified and, hence, were inadmissible.
In State v. Davis, 411 So.2d 434, 438 (La.1982.), this court held:
"To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered into evidence. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). A continuous chain of custody is not essential to enable the state to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized by the officer. State v. Guzman, 362 So.2d 744 (La.1978). State v. Godeaux, 378 So.2d 941 (La.1980)."
In the instant case, as in the Davis case, a continuous chain of custody was not essential because the evidence as a whole establishes that it was more probable than not that the fingerprints were those of the victim and that the shotgun pellets and the .22 caliber slugs were the pellets and slug removed from the victim's head.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 7
McCabe, in addition to arguing that the Trial Judge erred when he refused to subpoena out of state witnesses, now argues that the Trial Court erred in refusing to allow the Clerk of Court to testify and inform the jury that McCabe had attempted to subpoena those witnesses. He contends that even though the Trial Court denied his motion to subpoena out of state witnesses, the testimony of the Clerk was admissible in order to refute any adverse inference that may arise from their failure to testify, and conversely, because the Trial Judge refused to permit the testimony, there was a prejudicial inference that McCabe made no efforts in his defense.
In his ruling, the Trial Judge said "because of the fact that you did not support your request (for out of state witnesses) properly, I denied the request for those subpoenas...and I do not feel that you're entitled to bring before the jury the fact that you requested some subpoenas...." (Tr. 183).
As we have previously said, McCabe did not show that those witnesses were material to his defense. Because he did not show that they were material, the Trial Judge did not err when he refused to permit McCabe to show he had attempted to subpoena witnesses; his attempt to subpoena immaterial witnesses would be irrelevant.

ASSIGNMENT OF ERROR NO. 8
Finally, McCabe argues that the Trial Judge erred when he refused to admit as evidence both a briefcase and some photographs of his children, items which had been taken from McCabe at the time of his arrest. McCabe wanted to prove that the victim, Janice New, had used the photographs to underscore her threats that his children would be harmed if McCabe did not participate in the proposed drug transaction because, he contends, these threats also provoked the killing. There was no proof offered, however, to show that the photographs, which were in the briefcase when it was seized, had also been in the briefcase when the crime was committed.
Furthermore, although the jury usually must be given an opportunity to decide what weight it will give to an item of evidence, in this instance, the jury had the opportunity to read McCabe's written statement given to Sheriff Bartlett which told of the alleged threats by Janice New and how she had underscored those threats by showing him photographs of his children. The photographs themselves, even if relevant, would merely have been cumulative evidence.
In his ruling, the Trial Judge stated:

*961 Now, if the pictures were seized in his possession, I don't see any particular relevance to say that somebody else had pictures four months before. I don't believe that it's relevant here, and I don't think there's been sufficient proof to establish any photographs that were found in a briefcase in Omaha, Nebraska four months after the alleged incident tie in with this case.
The Trial Court is vested with much discretion in determining whether evidence is relevant and admissible, and his ruling "as to relevancy should not be disturbed in the absence of a clear showing of abuse of discretion." State v. Walker, 344 So.2d 990, 996 (La.1977).
This assignment lacks merit.
For the above reasons, the conviction and the sentence are affirmed.
DIXON, C.J., dissents.
NOTES
[*] Judges William H. Byrnes, III and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Pro Tempore, with Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.