LOLLEY, J.
11 This criminal appeal arises from the Fifth Judicial District Court, Parish of Richland, State of Louisiana. Jessty Reese pled guilty to manslaughter (La. R. S.14:31) and conspiracy to commit armed robbery (La. R.S. 14:26 and La. R.S. 14:64). He was sentenced to 40 years at hard labor for manslaughter and to 35 years at hard labor for conspiracy to commit armed robbery. For the following reasons, Reese’s conviction and sentence are affirmed.
Facts
Jessty Reese was indicted for: (1) conspiring with codefendant Cody Reynolds to rob Brandon Johnson in his home while *1179 armed with a firearm on December 16, 2012, in violation of La. R.S. 14:26 and La. R.S. 14:64; and, (2) the second degree murder of Johnson during the attempted commission of that armed robbery, in violation of La. R.S. 14:30.1.
Reese filed a motion to reduce bond, and a hearing was conducted. At that hearing, Officer Mario Turner, of the Ray-ville Police Department, testified that on December 16, 2012, responding officers found Brandon Johnson on the floor of his apartment on Coenen Drive, Rayville, Louisiana, with two gunshot wounds to the abdomen. According to Off. Turner, the investigation led officers to Cody Reynolds and other witnesses, who revealed the following information.
On December 16, Reese approached Reynolds with an idea to make some money. The two formulated a plan to steal marijuana from Johnson, and a 9 mm handgun and two masks were obtained to conduct the crime. Later that evening the two met up and went to the back door of Johnson’s 12apartment, where Reynolds said they could see Johnson, his girlfriend (Ashley Rudd), and the couple’s two young children inside. Reese and Reynolds entered Johnson’s apartment through the back door. Reese pointed a gun at Johnson, and a struggle between the two ensued. When Rudd tried to intervene, Reynolds stopped her and she fought back, pulling off his mask. Reese fired two gunshots and Johnson collapsed, dying in the presence of Rudd and the children. Reese and Reynolds ran out of the apartment. Rudd was unable to identify the intruders.
According to Off. Turner, during the investigation several witnesses were interviewed who had been walking through the neighborhood around the time of the shooting. Those witnesses reported hearing sirens and seeing two men, dressed in all black, run from the direction of Johnson’s apartment and go behind a vacant house. Both men were soaked from running through a nearby ditch. Another witness (who lived close to Johnson) informed officers that he heard the gunshots and saw two guys, dressed in all black, running toward a nearby ditch. Officers found footprints around the ditch, but were unable to match them with the shoes later found in Reese’s or Reynolds’ homes.
Officers found two 9 mm shell casings at the scene, which matched the caliber of bullets that killed Johnson. The weapon was never found. Two stocking caps were found on the couch in the apartment-one with Reese’s DNA and one with Reynolds’ DNA. A large amount of marijuana was found in a backpack in Johnson’s apartment.
1-jBased on a witness identification, Off. Turner located Reynolds, who related the sequence of events leading up the incident. He also identified Reese as being the co-perpetrator and shooter. Later, when questioned by police, Reese denied any involvement or knowledge of the incident and told officers he had been at a barbecue in the neighborhood. Reese was ultimately arrested and charged by bill of information.
Initially, a jury trial against Reese was commenced. But subsequently, Reese informed the trial court that he had accepted the state’s plea agreement, and he would plead guilty to the reduced charges of-manslaughter, in violation of La. R.S. 14:81, and conspiracy to commit armed robbery, violations of La. R.S. 14:26 and La. R.S. 14:64. At the hearing on the guilty pleas, the trial court accepted the facts as stated at the bond reduction hearing and accepted Reese’s plea. A presen- *1180 tence investigation report (“PSI”) was ordered.
A sentencing hearing was conducted. After consideration of the PSI, the trial court sentenced Reese to the maximum of 40 years at hard labor on the manslaughter conviction. For conspiracy to commit armed robbery, Reese was sentenced to 35 years at hard labor. Reasoning that the 40 year sentence was not enough, the trial court ordered the 35 year sentence to run consecutive to the first. Reese was advised he had 30 days to appeal his sentence and two years to seek post-conviction relief. Reese’s subsequent motion to reconsider sentence was denied, and this appeal ensued.
|4Discussion

Excessive Sentence

Reese’s appeal counsel raises one assignment of error and argues that the trial court imposed an excessive sentence against Reese in this matter. Specifically, Reese maintains that he is not the worst offender, that this was not the worst offense, and his sentences are constitutionally excessive. We disagree.
The penalty for the offense of manslaughter is imprisonment at hard labor for not more than 40 years. La. R.S. 14:31. The penalty for the offense of armed robbery is imprisonment at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). Louisiana R.S. 14:26 provides that whoever is a party to a criminal conspiracy to commit any other crime shall be fined or imprisoned, or both, in the same manner as for the offense contemplated by the conspirators; but such fine or imprisonment shall not exceed one-half of the largest fine, or one-half the longest term of imprisonment prescribed for such offense, or both. Accordingly, conspiracy to commit armed robbery is punishable by imprisonment for 10 to 49½ years at hard labor without the benefit or parole, probation, or suspension of sentence.
The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Mandigo, 48,801 (La.App.2d Cir.02/26/14), 136 So.3d 292, writ denied, 2014-0630 (La.10/24/14), 151 So.3d 600. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and therefore, is given broad discretion in sentencing. State v. Zeigler, 42,661 (La.App.2d Cir.10/24/07), 968 So.2d 875. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,-515 (La.App.2d Cir.09/21/11), 73 So.3d 1021, writ denied, 2011-2347 (La.03/09/12), 84 So.3d 551.
An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App.2d Cir.11/02/11), 77 So.3d 1052. Where the defendant’s motion to reconsider sentence alleges mere excessiveness of sentence, on appeal the reviewing court is limited to considering whether the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. *1181 Boyd, 46,321 (La.App.2d Cir.09/21/11), 72 So.3d 952.
Under constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App.2d Cir.11/02/11), 77 So.3d 1047.
1 fiMaximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App.2d Cir.04/04/07), 954 So.2d 804. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.04/30/08), 981 So.2d 792. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain. State v. Black, 28,100 (La.App.2d Cir.02/28/96), 669 So.2d 667, writ denied, 1996-0836 (La.09/20/96), 679 So.2d 430.
The defendant’s personal history and criminal record, as well as the seriousness of the offense, are some of the elements considered, but the trial court is not required to weigh any specific matters over other' matters. State v. Moton, 46,-607 (La.App.2d Cir.09/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.03/30/12), 85 So.3d 113.
All convictions and all prior criminal activity may be considered, as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App.2d Cir.12/03/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/06/09), 21 So.3d 305. Absent a defendant’s assertion that he was falsely or mistakenly charged with an offense, the sentencing court may consider a dismissed charge as part of the defendant’s criminal history, even when the dismissal forms part of the plea agreement. State v. Pamilton, 43,112 (La.App.2d Cir.03/19/08), 979 So.2d 648, writ denied, 2008-1381 (La.02/13/09), 999 So.2d 1145, citing State v. Cook, 466 So.2d 40 (La.65 App. 2d Cir.1985); State v. Daley, 459 So.2d 66 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1264 (La.1985).

Consecutive versus concurrent sentences

Louisiana C. Cr. P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Wallace, 44,880 (La.App.2d Cir.01/27/10), 31 So.3d 557. While concurrent sentences for crimes arising from a single course of conduct or transaction are favored, the trial court has discretion to impose consecutive sentences based on factors such as the defendant’s criminal history, the violence of the charged crime, *1182 or the risk the defendant poses to the community. State v. Thomas, 1998-1144 (La.10/09/98), 719 So.2d 49; State v. Johnson, 42,328 (La.App.2d Cir.08/15/07), 962 So.2d 1126.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record and the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra. Among the factors to be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant poses an unusual risk of danger to the | ¿public, the potential for the defendant’s rehabilitation, and whether the defendant has received benefit from a plea bargain. State v. Barnett, 46,303 (La.App.2d Cir.05/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.04/13/12), 85 So.3d 1239.

Young felony offeners and first-time felony offenders

Lengthy sentences are acceptable, even for young or first offenders. State v. Thomas, supra. In the companion cases of State v. Norman, 482 So.2d 1069 (La.App. 3d Cir.1986), writ denied, 487 So.2d 436 (La.1986) and State v. Dennard, 482 So.2d 1067 (La.App. 3d Cir.1986), two young persons received maximum sentences, imposed consecutively, for their horrendous crimes. Jane Ann Norman, age 16, and her boyfriend, Richard Den-nard, age 19, decided to run off together. To prevent any argument from Jane’s mother and grandmother, they hit the sleeping women on the head with a whiskey bottle. When the grandmother woke up screaming, they shot both women; took their cash, credit cards, and car; and, fled to the state of Maryland. Jane and Richard were arrested and charged with two counts of first degree murder. Jane pled guilty to two counts of manslaughter and got the maximum sentence for each count, to run consecutively. Richard pled guilty to two counts of second degree murder and received two life sentences, to run consecutively. Noting the gruesome nature of the crimes, the consecutive sentences of each defendant were upheld on appeal.
In State v. Green, 2010-0791 (La.App. 4th Cir.09/28/11), 84 So.3d 573, writ denied, 2011-2316 (La.03/09/12), 84 So.3d 551, Green was only [fl19 at the time he committed armed robbery. He had only one prior felony for illegal possession of stolen things. The Fourth Circuit found that Green’s 50-year sentence for armed robbery with a firearm was not excessive, even given his young age, because: he created a risk of bodily harm and death for multiple people; there was an undue risk that he would commit another crime; the defendant was in need of correctional treatment by commitment in an institution; and, any lesser sentence would deprecate the seriousness of the crime. Id. at 585.
In State v. McCray, 28,531 (La.App.2d 08/21/96), 679 So.2d 543, the defendant was 29 years old and had no prior criminal record when he began committing a string of armed robberies which resulted in consecutive sentences totaling 105 years of imprisonment at hard labor. In upholding the lengthy sentence, this Court noted the risk of great bodily harm the defendant created by committing the armed robberies. Id. at 545.
Here, the 40-year maximum sentence for manslaughter and the 35-year *1183 sentence for conspiracy to commit armed robbery fall within the statutory ranges allowed for those offenses. Reese did file a motion to reconsider sentence and claimed that the consecutive sentences were constitutionally excessive because he had no prior felony convictions and his incarceration will place a hardship on his family. Prior to sentencing and again in its reasons for denying the motion to reconsider sentence, the trial court exhaustively discussed the reasons for imposing upon Reese the length of sentences and the decision to run the sentences consecutively.
|inThe trial court noted Reese’s promising personal history with good grades, school sports participation, high school diploma, supportive family and friends, and a steady work history showing his commitment to his family and community. The trial court noted the numerous letters on Reese’s behalf, as well as the fact that he had two young children. However, Reese’s positives were offset by his extensive criminal history. From the age 18, Reese had 27 arrests and 20 misdemeanor convictions for crimes including: disturbing the peace, criminal trespass, simple battery, flight from an officer, and possession of marijuana. Despite numerous “second chances” and the trial court’s repeated show of leniency with fines and probation, the offenses continued. Reese’s prior conviction for multiple counts of aggravated assault with a firearm was a warning he largely ignored as he progressed to planning this home invasion and armed robbery.
In this case, Reese was the instigator who masterminded the plan to rob Johnson at gunpoint in Johnson’s home. His victim was not a random choice, but someone Reese knew. He conspired to rob Johnson in his home to steal marijuana and money from him and acted in furtherance of that goal by masking his identity and securing and arming himself with a firearm.
A disturbing aspect of Reese’s crime is that he continued with this planned armed robbery even after observing that Johnson’s fiancée and two very young children were in the room. Reese wrestled with Johnson after he resisted Reese. Then Reese shot the victim not once, but twice at close range. Knowing Johnson’s fiancée and children were close enough to cause |1Tthem threat of harm, Reese cruelly killed the victim in front of them, causing lifelong trauma to those two young children and their mother.
While there were many family and friends who vouched for Reese’s kindness and caring, these sentiments were nowhere to be found in Reese’s criminal record and his complete disregard for the well-being of Johnson and his family in the instant crime. Rayville police officers even took the unusual step of providing a letter to the trial court stating they consider Reese a danger to the community because of his history in the short time since he turned 18 years old. Although Reese said he was voluntarily pleading guilty and expressed remorse at sentencing about Johnson’s death, Reese has not taken responsibility for his actions.
Reese’s lengthy consecutive sentences are supported by the record, in particular: his extensive criminal history in which he failed to learn from past crimes; the violence and permanent damage he wrought upon the victim and his family; and, the risk he poses to the community. Given the violent and tragic circumstances of this case, these imposed sentences totaling 75 years, while harsh for a 25-year-old man *1184 with no prior felony convictions, do not shock the sense of justice and are not out of proportion to the offenses Reese committed. This defendant fails to show that the trial court abused its discretion in imposing these sentences and that the consecutive sentences are constitutionally excessive.
The trial court failed to order that the sentence for conspiracy to commit armed robbery is to be served without benefit of parole, probation, or suspension of sentence. The trial court’s failure to state that the sentence 112is to be served without benefits will be corrected automatically by operation of La. R.S. 15:801.1. See State v. Braziel, 42,668 (La.App.2d Cir.10/24/07), 968 So.2d 858.
Untimely Pro Se Brief
Reese’s pro se brief was due on January 15, 2015, but was not received until January 21, 2015, and so was filed untimely. In addition to complaints about his sentence, which duplicate those brought by his appeal counsel, Reese also argues that:
• he was ineffectively represented by his trial attorney, who he complains coerced him into entering the plea agreement by telling him that he would receive only a 20-year sentence;
• his trial attorney was ineffective for recommending that he plead guilty, therefore his guilty plea was involuntary;
• the facts were never truly established and there was no physical evidence tying him to the offenses;
• the Rayville Police Department coerced and threatened his codefen-dant and the other witnesses to make statements incriminating him;
• the victim’s fiancée never said that she feared for her life and did not identify him as the shooter even though she knew him;
• the children were never threatened or harmed; and,
• he is innocent.
Generally, a claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief (“PCR”) in the trial court. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. A motion for new trial is also an acceptable vehicle by which to raise such a claim. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.65 09/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.04/04/08), 978 So.2d 325. When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,-394 (La.App.2d Cir.09/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, to establish that his attorney was ineffective, the defendant must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland, supra; State v. Grant, 41,745 (La.App.2d Cir.04/04/07), 954 So.2d 823, *1185 writ denied, 2007-1193 (La.12/07/07), 969 So.2d 629.
Second, the defendant must show that counsel’s deficient performance prejudiced his defense and that, but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174, writ denied, 1995-1398 (La.11/03/95), 662 So.2d 9.
| UA defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123, writ denied, 2002-1570 (La.05/30/03), 845 So.2d 1067.
Reese provides no factual basis to support the assertions that his attorney was ineffective for recommending a plea that reduced his sentence exposure on count one from life imprisonment to a maximum of 40 years’ imprisonment. He pled guilty after jury selection began and there is no showing that, except for his attorney’s recommendation, he would not have pled guilty and gone to trial. He fails to prove that his attorney’s performance was defective or that he was prejudiced as a result.
As to his other assertions regarding his innocence, by pleading guilty, Reese waived his right to challenge the sufficiency of the state’s case or his conviction on appeal, except to raise a claim that his guilty plea was constitutionally infirm. See State v. Bourgeois, 406 So.2d 550 (La.1981); State v. Morris, 38,928 (La.App.2d Cir.09/22/04), 882 So.2d 1221, 1228. His arguments presented in his untimely appeal brief are without merit.
Conclusion
For the foregoing reasons, the convictions and sentences of Jessty Reese are affirmed.
AFFIRMED.