Judgment rendered July 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,398-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                  Appellee

versus

JEREMY RACHAL                  Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 333082

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT       Counsel for Appellant
By: Douglas Lee Harville

JEREMY XAVIER RACHAL             Pro Se

JAMES E. STEWART, SR.             Counsel for Appellee
District Attorney

RICHARD SOL FEINBERG
RON CHRISTOPHER STAMPS
Assistant District Attorneys

* * * * *

Before GARRETT, COX, and McCALLUM, JJ.

**McCALLUM, J.**

Jeremy Rachal ("Rachal") entered a plea of guilty to second degree murder and was sentenced to life in prison at hard labor without benefit of parole, probation or suspension of sentence. He made his plea pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), known as an *Alford* plea, and *State v. Crosby*, 338 So. 2d 584 (1976), known as a *Crosby* plea. He also entered a guilty plea to aggravated battery. For the latter conviction, he was sentenced to ten years at hard labor to run concurrently with his sentence for second degree murder. He now appeals his conviction and sentence for second degree murder. Through both a filing by the appellate project on behalf of Rachal and a pro se brief by Rachal himself, six errors are assigned for our review. For the following reasons, we affirm Rachal's conviction and sentence.

FACTS

On May 11, 2015, a fire was reported at the Kingwood Forest Apartments in Shreveport, Louisiana. The fire department was dispatched to the scene and was able to gain control of the fire and limit the damage. Investigators determined that an unknown person had intentionally set the fire in the bedroom of the apartment. Although the entire apartment was saturated in gasoline, the fire did not burn the living room. An unburned victim was found with a fatal gunshot to his head. Investigators determined that someone had set the fire in an attempt to conceal the victim's murder. The victim, Jed Howard, lived in the apartment.

Mr. Howard's vehicle was later found ablaze in a wooded area. Video footage from a house near the site showed a man drive the stolen vehicle into the woods and leave the vehicle there. An hour later, a second vehicle

parked near the woods and a man exited the vehicle. The man walked into the woods and then later exited the woods. Approximately an hour later, a man walked into the woods with a can of gasoline and then exited. The man returned forty-five minutes later, at which time the fire was ignited.

Police released the video to the public. The defendant's siblings, Candice Rachal and Dustin Rachal, along with the defendant's mother, Shelia Rachal, identified the defendant as the man in the video footage. The second vehicle in the video footage was that of Dustin Rachal. Dustin Rachal told police he had driven his brother to the woods. John Mosley, a friend of Rachal, admitted that he drove Rachal to a gas station where Rachal bought gasoline and a box of matches. The box of matches identified by John Mosley was the same as the box of matches found at the side of the victim's burned vehicle.

Several witnesses identified recent burns on Rachal. He was found to have purchased medical supplies indicative of a burn treatment around the same time as the two fires. Friends and family members returned items to the police or told the police of items that Rachal had stolen from the apartment of the victim. The returned items matched descriptions and serial numbers of items missing from the victim's apartment. Additional items in the defendant's possession included the victim's clothing along with a muddy pair of boots that matched the boots from the video footage. John Mosley also admitted that he had sold a watch, gold rings, cocaine, and two .38 revolvers for the defendant.

Ashley Coleman, a fiancé of a friend of Rachal, told police that she overheard Rachal admit to the murder of the victim. She stated that she heard Rachal say that he placed a pillow over the victim's head and then

shot him.  Ms. Coleman's account of the murder matched the investigator's

determination even though such information had not been made public.

Finally, after his arrest, Rachal himself confessed to the murder via an

inmate electronic tablet wherein he stated:

> I cant live with what ive done.  My name is Jeremy Rachal and
> I want to confess to the murder I'm here at CCC for I did kill
> him and set his house on fire and also my friend Derrick
> Thomas told me he did do the murder he's on because Smurf
> the victim used to beat him up everyday for having --- with his
> girl and I say all this under oath… Jeremy Rachal[1]

By Bill of Indictment, Rachal was charged with second degree murder

and aggravated arson.  On July 29, 2019, Rachal entered a guilty plea to

second degree murder, pursuant to *Alford* and *Crosby*.  As part of the

agreement, the state dismissed the charge of aggravated arson, seven other

charges from other criminal dockets, and agreed to not file an habitual

offender bill.

Prior to Rachal pleading guilty, the state had offered an opportunity to

plead to a lesser charge.  Instead of taking that deal, or proceeding to trial,

Rachal countered with his own offer to plead guilty to second degree

murder.  Because it was particularly important to him that he maintain his

innocence and his right to appeal, Rachal entered the guilty plea under the

specification that he was allowed to do so pursuant to *Alford* and *Crosby*.

Rachal agreed to the sentence of life imprisonment without the benefit of

parole, probation or suspension of sentence.  Rachal also entered a guilty

plea to a charge of aggravated battery.  His sentence for that conviction was

set to run concurrently with his sentence for second degree murder.

---

[1]     We have left the confessional statement by Rachal verbatim, choosing not to
insert "(sic)" the multiple times necessary throughout the paragraph.

Rachal appeals his conviction for second degree murder. He alleges the following six errors: (1) a *Brady* violation by the state; (2) the trial court violated his right to a speedy trial; (3) the trial court erred by failing to rule on Rachal's pro se motions prior to accepting his guilty plea; (4) Rachal received ineffective assistance of counsel; (5) an insufficient factual basis existed for his guilty plea; and (6) his guilty plea was involuntary.

DISCUSSION

The case before us includes a plea made pursuant to both *North Carolina v. Alford, supra*, and *State v. Crosby*, *supra*. Rachal was offered the opportunity to plead guilty to a lesser charge. That plea would have been unqualified. Rachal instead tendered a plea for second degree murder, pursuant to *Alford* and *Crosby*; an alternative resolution that he himself presented to the state. The state accepted his proposal.

Typically, a defendant admits guilt when pleading guilty. His guilty plea, when accepted by the trial court, also waives the defendant's right to appeal all non-jurisdictional defects in the proceedings prior to his plea. The plea further waives the right to challenge the merits of the state's case and the factual basis for the guilt. With an *Alford* plea, the defendant maintains his innocence. With a *Crosby* plea, the defendant maintains his right to appeal specifically identified pre-plea errors. A *Crosby* plea allows a fair and efficient way for a court of review to focus on a central issue which, if found erroneous, would mandate reversal of any resulting conviction.

Under *State v. Joseph*, 2003-315 (La. 5/16/03), 847 So. 2d 1196, failure of the defendant to specify the pre-plea issues for review does not absolutely preclude his ability to seek review. However, we may limit our review in scope. In limiting the scope of review, we must presume that the

4

trial court permitted the *Crosby* plea reservation to be no broader than necessary to effectuate the underlying purpose of the plea. *Id.* As such, our review will be limited to evidentiary rulings that would "go to the heart of the prosecution's case." *Id.* Defendant would have waived such issues by entering an unqualified guilty plea. For example, appellate review of a trial court's denial of a motion to suppress is reserved whereas rulings as to the conduct of the trial, such as a motion to continue, are not preserved.

## *BRADY* VIOLATION

Rachal alleges that the state withheld exculpatory evidence, in violation of his rights as expounded upon by the Supreme Court of the United States in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The *Brady* court held that where a state fails to provide evidence favorable to an accused upon his request for such evidence, then the state violates the due process rights of the accused if the evidence is material to either guilt or punishment. *Id.* Good faith or bad faith by the state in suppressing such evidence is not considered. *Id.*

Rachal contends that the sheriff's office had evidence that would show that his confession was forged. He alleges that another inmate, Trivenskey Odom, wrote the confession on his inmate tablet. The state argues that all evidence from the Sheriff's office was provided to Rachal. It further contends that it answered and provided all related evidence sought by Rachal's subpoena. Indeed, at the plea hearing, counsel for Rachal stated on the record that she had received such evidence from the state and that she was providing copies of the evidence to Rachal.

The record before us does not include the documents or the evidence cited by Rachal. He further did not provide a copy of the alleged evidence

for our review. He fails to establish that any evidence given to him by the state proves that another inmate typed his confession. Furthermore, it is clear from the record and the transcript of the hearing that Rachal did in fact receive copies of the evidence that he had requested before entering his plea.

Furthermore, we cannot find that the evidence in question was exculpatory. Rachal has failed to establish a *Brady* violation and therefore, we find that Rachal did not suffer any prejudice.

This assignment of error lacks merit.

**SPEEDY TRIAL**

On August 13, 2015, by Bill of Indictment, the state charged Rachal with second degree murder and aggravated arson. Pursuant to La. C. Cr. P. art. 578, the state was required to commence trial within two years. For Rachal, that date would have been August 13, 2017. The state did not commence trial prior to that date. Rachal entered his guilty plea on July 29, 2019, and argues that his right to a speedy trial was violated.

Although La. C. Cr. P. art. 578 requires commencement of trial within two years, exceptions do exist to suspend the prescriptive two-year period. In reviewing La. C. Cr. P. art. 580(A), along with this Court's previous opinions in *State v. Barnett*, 50,123 (La. App. 2 Cir. 8/12/15), 174 So. 3d 748), and *State v. Richter*, 51,259 (La. App. 2 Cir. 8/9/17), 243 So. 3d 1193), one finds that any motion filed by defense that has the effect of delaying trial suspends the tolling of the two-year period mandated by La. C. Cr. P. art. 578. Motions to quash, motions to suppress, applications for discovery, bills of particular, and motions for continuances all suspend the two-year time delay. *See State. Barnett*, *supra*; *State v. Richter*, *supra*.

6

Rachal filed several motions that suspended the two-year period. On May 9, 2017, he filed a motion to appoint new counsel. On January 28, 2019, he filed a motion to quash. On February 4, 2019, he filed a motion in *limine*. Defendant's counsel also received continuances of Rachal's case on November 16, 2016, May 30, 2017, and June 19, 2018.

These motions suspended the prescriptive period in which the state had to commence trial. We particularly note that prior to his guilty plea, the trial court had yet to rule on Rachal's motions in *limine*. Therefore, the suspension of the time delay had yet to recommence.

Rachal further argues that he previously filed a motion to quash based on a violation of his right to a speedy trial. The trial court denied that motion on February 4, 2019. Rachal argues that the trial court erred in denying his motion.

We also find that the trial court was correct in denying that motion. We further note that Rachal sought supervisory review of that trial court ruling, which this Court declined to consider because Rachal failed to comply with U.R.C.A. Rules 4-3 and 4-5. Rachal failed to remedy his failures and he did not seek any further review of the issue at that time.

We find that no violation of defendant's right to a speedy trial occurred. This assignment of error lacks merit.

Rachal also contends that his lawyer was ineffective in arguing for his motion to quash. The issue of ineffective counsel is addressed below.

**RACHAL'S PRE-TRIAL PRO SE MOTION IN *LIMINE***

At the time that Rachal tendered his pleas, the trial court had yet to rule on his motion in *limine*. Rachal contends that the trial court erred by accepting his plea without first ruling on this motion. He alleges that had the

trial court held a hearing on his motion, he would have been able to prove that another inmate wrote his confession. He provided no evidence or testimony that substantiates his contention that another inmate, named Trivenskey Odom, submitted the confession. Furthermore, Trivenskey Odom, being deceased, could not provide any corroboration of Rachal's allegations.

When a defendant proceeds to trial without raising the issue of the trial court's failure to rule on a pre-trial motion, the defendant waives the motion. *See State v. Holmes*, 2006-2988 (La. 12/2/08), 5 So. 3d 42, *cert. denied*, 558 U.S. 932, 130 S. Ct. 70, 175 L. Ed. 2d 233 (2009); *State v. Winzer*, 49,316 (La. App. 2 Cir. 10/8/14), 151 So. 3d 135, *writ denied*, 2014-2373 (La. 4/22/16), 191 So. 3d 1044; *State v. Farris*, 51,094 (La. App. 2 Cir. 12/14/16), 210 So. 3d 877, *writ denied*, 2017-0070 (La. 10/9/17), 227 So. 3d 828. Although an indigent defendant has a right to counsel or to represent himself, he does not enjoy a right to be both represented and pro se in representation. *State v. McCabe*, 420 So. 2d 955 (La. 1982); *State v. Winzer*, *supra*. In fact, it is well settled in Louisiana that a trial court is not required to entertain motions filed by a defendant who is represented by counsel. *State v. Outley*, 629 So. 2d 1243, 1250 (La. App. 2 Cir. 12/3/93), *writ denied*, 1994-0410 (La. 5/20/94), 637 So. 2d 476; *State v. McCabe*, *supra*.

Counsel represented Rachal when he filed his pro se motion in *limine*. The record before us does not show that counsel for Rachal adopted the motion. Furthermore, lacking any support, we find that the motion ultimately had no merit. Therefore, the court's failure to rule on the motion in *limine* did not prejudice the defendant. Moreover, when Rachal proceeded to plead guilty, he waived all non-jurisdictional defects.

8

Although he did plead pursuant to *Crosby,* he failed to specify or identify this issue as preserved for review.

This assignment of error lacks merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL[2]

Rachal argues that he had ineffective assistance of counsel in violation of his Sixth Amendment right. He alleges that his appointed counsel, Michelle Andrepont, failed to file a subpoena for discovery as he had requested, made incriminating comments against him, and violated his right to a speedy trial by filing motions to continue his trial. He points out that he even made a motion to the trial court for the appointment of a new attorney.

The trial court did allow Rachal to represent himself at a hearing on August 3, 2017. At that hearing, Rachal withdrew his motion to appoint new counsel. Michelle Andrepont remained appointed as standby counsel.

However, by September 20, 2017, complaining that a speech impediment prevented him from properly representing himself, Rachal again asked the court to appoint a new lawyer. The court explained to him that although he has a right to appointed representation, he does not have a right to choose which lawyer will be appointed. Rachal then asked the court to reappoint Michelle Andrepont to represent him. The court did so.

Rachal now asserts that he was provided ineffective assistance of counsel. He specifically takes issue with his attorney's purported ineffective handling of the state's alleged speedy trial violation. He also contends that his attorney refused to file a subpoena for discovery regarding his confession.

---

[2] We note that claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief. However, when the record is sufficient, we may resolve the issue on direct appeal. The record before us is sufficient for such consideration.

The Sixth Amendment of the Constitution provides defendants a right to effective assistance of counsel. In order to show that counsel was ineffective, a defendant must show (1) that counsel's performance was deficient and (2) that such lacking performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The first prong requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland v. Washington*, *supra*; *State v. Reese,* 49,849 (La. App. 2. Cir. 5/20/15), 166 So. 3d 1175, *writ denied*, 2012-1236 (La. 6/3/16), 192 So. 3d 760. The second prong requires a showing that but for counsel's errors, there was a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, *supra*; *State v. Reese*, *supra*. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim. *Strickland v Washington*, *supra*, *State v. Reese*, *supra*. General statements and conclusory charges will not suffice. *Strickland v Washington*, *supra*, *State v. Reese*, *supra*.

In considering an attorney's actions in defense of their client, we give deference to the attorney's trial strategy. *See State v. Jones*, 49,396 (La. App. 2 Cir. 11/19/14), 152 So. 3d 235, *writ denied*, 2014-2631 (La. 9/25/15), 178 So. 3d 565. The filing and pursuit of pre-trial motions is squarely within the domain of such strategic decisions required of an attorney when properly and effectively assisting and representing their defendant client. *Id.* We do not require that counsel for a defendant engage in efforts that would prove futile and unproductive to the effective representation of their client. *Id.*

10

We have previously discussed that Rachal's allegation of a speedy trial violation lacks merit. We also found that his alleged *Brady* violation lacks merit. We have previously discussed that Rachal's attorney did in fact file the subpoena that he requested, received the alleged discovery, and provided the documents to him.

Nevertheless, Rachal assigns fault to his attorney. He specifically argues that his failure to prove a speedy trial violation before the trial court was caused by his appointed counsel's multiple requests to continue his case. In light of our previous discussion on that matter, we find Rachal's counsel was not ineffective. She sought continuances of the trial in order to resolve the multiple issues that Rachal himself asked her and the court to resolve prior to trial.

Rachal contends that his attorney further provided ineffective counsel in failing to zealously pursue his motion to quash. The attorney believed that his motion to quash lacked merit. She was correct. Pursuing that motion, as Rachal believes was required of his counsel, would have been nothing but futile.

Rachal fails to prove either prong of the two-prong *Strickland* test. He does not make a showing that his attorney was deficient. He likewise fails to show that but for her performance, his outcome would have been different than the plea that he proposed himself to the state. The record lacks a showing that the actions and decisions by Rachal's attorney were improper or deficient.

This assignment of error lacks merit.

**FACTUAL BASIS**

Rachal argues that the factual basis read into the record at the time of his guilty plea was not sufficient as proof of his guilt. He specifically alleges that the factual basis was insufficient to prove that he shot the victim, set either the apartment or car on fire, stole the victim's car or belongings, suffered any burn associated with the two fires, or that he made the confession on his inmate tablet.

For an *Alford* plea, the record must contain "strong evidence of actual guilt." *North Carolina v. Alford*, *supra*. The standard under *Alford* is not whether the state may prevail at trial by establishing the essential elements of the crime beyond a reasonable doubt and negating all possible defenses. *State v. Orman*, 97-2089 (La. 1/9/98), 704 So. 2d 245. Rather, the standard is whether the strength of the factual basis, coupled with the other circumstances of the plea, reflect that the plea represents a voluntary and intelligent choice among the alternatives. *State v. Orman*, *supra*. Appellate courts have used evidence adduced at evidentiary hearings, such as a preliminary examination or a hearing on a motion to suppress, to find a factual basis to support an *Alford* plea. *See State v. Orman*, *supra*; *State v. Kelly*, 17-221 (La. App. 5 Cir. 12/29/17), 237 So. 3d 1226; *State v. Linear*, 600 So. 2d 113 (La. App. 2 Cir. 1992).

Therefore, the trial court was required to find that a significant factual basis for the plea existed. The state read the following factual basis into the record:

> The state alleges that on or about May 11, 2015, Jed Howard was murdered at Kings Terrace Apartments. There was a fire set at that time. We subsequently learned that the victim had suffered a gunshot to the top of his head and that the fire was set in his apartment.

12

His car was also stolen at that time. It came up torched on Camrose Street, the 3800 block of Camrose Street. There was video surveillance on Camrose Street that the state alleges shows the defendant coming to the scene and leaving the scene after the car was torched as well.

The state would also note that the defendant suffered a severe burn during this time period providing inconsistent statements as to how the burns occurred indicating to his employer that the burns occurred at home, indicating to his mother that the burns occurred at work.

Further, there was a television that was taken from the victim's home that was subsequently sold to the defendant's sister or brother and that TV was ID'd as one of the -- a TV that was taken from the victim's home.

Further, the sister corroborates that the vehicle that was driven by the -- that was used to torch the vehicle was driven by the defendant's brother, Dustin, and the car was owned by his sister, both identified the defendant as being present at the torching.

And finally, the state alleges that there is a tablet that was used at CCC that confirms the event admitted by the defendant that we intended to show at trial.

The factual basis recited by the state is sufficient. It provides details of the murder and the arsons involved. It links the defendant to the vehicle arson through both surveillance video and witness identification of the defendant at the scene of the vehicle fire. It links the defendant to property stolen from the victim's apartment. It details the defendant's injuries that corroborate his involvement in the arsons. It finally provides the evidence of a confession, made by the defendant, on his inmate tablet, while in jail.

Even if we were to find that the state's recitation of facts was insufficient standing alone, our inquiry would not end there. On August 12, 2015, the trial court presided over a preliminary examination. At the examination, the state presented the testimony of Detective Marlin Clark, of

the Shreveport Police Department. Detective Clark provided with detail the witness statements and evidence against Rachal. The trial court, at that time, found probable cause to hold Rachal.

The state's factual basis and the evidence from the preliminary examination are sufficient to support Rachal's *Alford* plea. The factual basis provides strong evidence of Rachal's guilt for second degree murder.

This assignment of error lacks merit.

**VOLUNTARY PLEA**

Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats. It also provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, along with any mandatory minimum penalty and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite the record, his guilty plea was involuntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. McGarr*, 52,641 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1189; *State v. Johnson*, 52,965 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1245. An express and knowing waiver of the above rights must appear on the record. *Boykin v. Alabama*, *supra*; *State v. Johnson*, *supra*. We may not presume an unequivocal showing of a free and voluntary waiver. *Boykin v. Alabama*, *supra*; *State v. Johnson*, *supra*.

As previously discussed, the "best interest" or *Alford* plea, which derives from the case of *North Carolina v. Alford*, *supra*, is one in which the defendant pleads guilty while maintaining his innocence. Under *Alford*, a

14

defendant may plead guilty without forgoing his protestations of innocence if the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Id.*

The test for the validity of a guilty plea does not depend upon whether the district court specifically informed the accused of every element of the offense. *State v. Cooper*, 52,408 (La. App. 2 Cir. 11/8/18), 261 So. 3d 975; *State v. Johnson*, *supra*. Rather, the defendant must establish that he lacked awareness of the essential nature of the offense to which he was pleading. *State v. Cooper*, *supra*; *State v. Johnson*, *supra*. Violations of Article 556.1 that do not rise to the level of *Boykin* violations are subject to the harmless error analysis. *State v. Cooper*, *supra*; *State v. Johnson*, *supra*. The proper inquiry is whether the defendant's knowledge and comprehension of the full and correct information would have likely affected his willingness to plead guilty. *State v. Cooper*, *supra*; *State v. Johnson*, *supra*.

We note the following key statements made on the record at the plea deal:

> (1) Asked to confirm that he offered the plea deal and that it was his desire to enter a plea pursuant to *Alford*, Rachal stated, "As long as I'm maintaining my innocence and as long as I'm maintaining my innocence in docket No. 333,082 for the second-degree murder, but I'm reserving my right for appeal. … I'll plead under *Alford*."

> (2) Asked if he understood the nature of the charges against him for second degree murder and aggravated battery and that he would receive the sentences of life in prison without any benefits, and ten years at hard labor to run concurrently, the court asked, "Is that what you want to do?" Rachal replied, "Right."

> (3) Asked again by the court if he understood the sentence he would receive, Rachal replied, "As long as I'm maintaining my innocence… and reserving my right for appeal."

15

(4) When asked if he understood his right to a jury trial and that he was waiving that right, Rachal replied, "Right."

(5) After an explanation of his right to confront his accuser, cross-examination, and to question witnesses, and if he understood he was waiving that right, Rachal replied, "Yeah."

(6) After a back and forth explanation of the right against self-incrimination and if the defendant understood that he was waiving that right, Rachal replied, "So all right,.. So by me pleading under *Alford*, you're basically saying that I'm not … I'm not incriminating myself, I'm still maintaining my innocence, I'm reserving my right to appeal?" The court replied, "Right." Rachal replied, "All right."

(7) When asked if he understood that the possible penalty for second degree murder was life imprisonment at hard labor without any benefits, Rachal replied, "Right."

(8) When asked if he understood the possible penalty for aggravated battery was ten years imprisonment and a fine of up to $5,000, Rachal replied, "Yeah."

(9) After a back and forth with the court about coercion or being forced into any plea deal, the court asked, "But you want to plead to the charge?" Rachal replied, "As long as I'm maintaining my innocence." Not satisfied, the court gave an example of coercion and asked Rachal, "It's something you decided to do because of the situation. Is that what you're saying?" Rachal replied, "I guess." The court then continued to press Rachal in order to ensure that he was pleading of his own free will. Ultimately, after Rachal's attorney spoke with him, the attorney stated, "Your Honor, it's my understanding that his concerns are addressed with the *Alford* and *Crosby* pleas. That under *Alford* he will not admit the facts, but will admit that it's in his best interest to take a plea." The court then asked if that was indeed the case and Rachal replied, "Yes."

(10) Again, later asked if he desired to plead pursuant to *Alford* and *Crosby*, for second degree murder, Rachal replied, "Yes. I plead under *Alford*, to reserve my right to appeal under *State versus Crosby* and I maintain my innocence in the second degree murder charge."

(11) When asked if he pleads guilty and admits the facts pertaining to the aggravated battery charge, Rachal replied, "Yeah. All right. Yeah. Yeah."

When a defendant voluntarily pleads pursuant to *Alford*, the defendant

will generally receive a benefit or advantage. One of the advantages most

often seen in *Alford* cases is that of a plea to a lesser charge or the defendant receiving a lesser sentence. At first glance, this case may appear atypical since the defendant received life in prison, without any benefits; the same sentence as he would have received via a guilty verdict by jury.

It is necessary to stress that the defendant himself requested the deal that he received. Rachal proposed to the state that he would plead guilty to second degree murder, and he agreed to the sentence of life in prison at hard labor, without any benefits. It is clear from the record that the crucial benefit that Rachal wished to receive was that he would maintain his innocence.

Rachal faced a seemingly overwhelming case against him. The state had evidence of Rachal's involvement at the both the apartment where the murder occurred and at the site where the victim's vehicle was burned. The state further had the incriminating statements of Rachal's own family and friends. They confirmed Rachal's involvement with the murder of the victim and one friend even stated to officers that she overheard Rachal confess to the murder. The state had Rachal's confession to the murder of the victim and the subsequent arson.

Rachal was undoubtedly steadfast and passionate about maintaining his innocence to the point of avoiding a jury trial altogether. The transcript of his plea shows a defendant unyielding in his insistence that he avoid any possibility of ultimately being found guilty, and that he be allowed to maintain his innocence and a right to appeal his conviction.

Furthermore, we must be clear in noting that Rachal did receive the following additional benefits with his *Alford* plea: the state dismissed the charge of aggravated arson against Rachal; the state dismissed charges

against Rachal in seven other criminal dockets; and the state agreed to not file a habitual offender bill against Rachal.  Finally, the court, on that same date, accepted a second guilty plea by Rachal to aggravated battery against a correctional officer, in which Rachal caused serious bodily injury.  Part of Rachal's plea offer to the state was that his sentence for aggravated battery would run concurrent to his sentence for second degree murder.  It is not even altogether ascertainable from the record that the prior offer of the state to a "lesser" charge would have resulted in any significant diminution of sentence.[3]

Rachal's motives for making the agreement he made are his own. Purposes that are of paramount importance to one person may be nugatory to another.  The question is not whether one would have made the same decisions as the defendant, but whether he understood what he was doing. His actions and words indicate he did.  The constitutions of the United States and Louisiana do not vest us with the authority to decide for a defendant what considerations he should most cherish and we decline to do so.

In light of the above and in consideration of the entire record, we find that Rachal voluntarily pleaded to second degree murder and aggravated battery, pursuant to *Alford* and *Crosby*.  As he most ardently wished, his plea agreement allowed him to maintain his innocence with regard to the second degree murder.  He also had numerous charges against him dropped and the state agreed to not file an habitual offender bill.

This assignment of error lacks merit.

### CONCLUSION

The conviction and sentence of the defendant are AFFIRMED.

---

[3]  The plea offer made by the state to Rachal was not placed into the record.

18